THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIE CACHO, M.D. )<br>Commander, U.S. Public Health Service )<br>110 W. Andrews Avenue, #200 )<br>Wildwood, NJ 08260 )<br>  )<br>        *Plaintiff*, )<br>  ) Civil Action No.<br>  v. )<br>  )<br>THE HONORABLE MICHAEL CHERTOFF )<br>Secretary, Department Of Homeland Security )<br>Washington, DC, 20528 )<br>  )<br>        *Defendant*. )<br>_____ ) | |

## COMPLAINT

1) This action, brought under 5 U.S.C. § 552a(b), "The Privacy Act," seeks damages for the unlawful disclosure of Personal Health Information ("PHI") pertaining to Plaintiff. Defendant's unlawful disclosure of Plaintiff's PHI caused Plaintiff to suffer pecuniary and non-pecuniary losses. Monetary damages are sought.

### JURISDICTION, VENUE. AND PARTIES

2) This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552a(g)(5). Venue is proper in this Court pursuant to 5 U.S.C. § 552a(g)(5).

3) Plaintiff, Dr. Willie Cacho, a physician, is a Regular Commissioned Corps Officer of the United States Public Health Service, who presently holds the rank of Commander. Plaintiff resides at the address provided in the caption above.

4) Plaintiff is assigned and attached to the United States Coast Guard, an entity of the Department of Homeland Security ("DHS"). He is a United States citizen.

5) Defendant, Michael Chertoff, is the Secretary of DHS. DHS is an agency of the United States Government. DHS maintains medical and other records pertaining to Plaintiff in a form retrievable by Plaintiff's name, Social Security Number, and other identifying information, and has possession and control over the records at issue in this complaint.

## STATUTE OF LIMITATIONS

6) Under the Privacy Act, suit must be brought within two years of the date on which the action arises.  5 U.S.C. § 552a(g)(5).  The disclosure in this case took place on or about July 1, 2004.  The action therefore is timely.

## STATEMENT OF FACTS

7) On February 26, 1999, Plaintiff was assigned and attached to the United States Coast.

8) On November 4, 1999, he began serving as Flight Surgeon at the Coast Guard Air Station Miami, Florida.

9) On June 18, 2004, Plaintiff called a counseling session with Commander Alan Sokolowski, Chief Pharmacist, Coast Guard Air Station Miami, Captain Keith Taylor, Commanding Officer, and CDR Michael Andres, Executive Officer, regarding CDR Sokolowski's deficient performance of duties.

10) On June 18, 2004, before the counseling session, CDR Sokolowski told Plaintiff, "If you f*** me, I will f*** you."

11) A non-commissioned officer witnessed CDR Sokolowski make the statement to CDR Cacho.

12) During the month of June, 2004, CDR Sokoloski revealed to Captain Taylor and CDR Andres information from CDR Cacho's medical records.

13) During the month of June and/or July, 2004, CDR Sokolowski also revealed to other individuals at Air Station Miami information from CDR Cacho's medical records. Those individuals had no need to know of CDR Cacho's personal medical information.

14) On July 8, 2004, CDR Cacho wrote the appropriate Coast Guard officials regarding CDR Sokolowski's violations of the Health Information Portability and Accountability Act, 42 U.S.C. § 1320d et. seq., requesting an investigation.

15) On July 23, 2004, CDR Cacho's aviation medicine privileges were temporarily suspended.

16) In July, 2004, RADM Higgins advised CDR Cacho of his recommendation that a Focused Review Team ("FRT") evaluate him and the medical services at Air Station Miami.

17) By memorandum dated August 9, 2004, the FRT reported it investigative findings.

18) On August 22-23, 2004, Captain Taylor initiated a command investigation of CDR Cacho.

19) On August 30, 2004, the Coast Guard read CDR Cacho his rights pursuant to Article 31 of the Uniform Code of Military Justice in relation to a formal investigation initiated by Captain Taylor.

20) On September 5, 2004, CDR S. J. Reynolds, Investigating Officer, submitted his report of investigation to Captain Taylor.

21) The report of investigation concluded that "CDR Cacho did not omit his medical condition during the November 2003 Flight Physical or the November 2003 SF 502 for personal gain or profit."

22) On September 24, 2004 Captain Taylor temporarily suspended CDR Cacho from his position as Chief, Health Services Division, Air Station Miami.

23) On September 27, 2004, CAPT Taylor issued CDR Cacho an "Administrative Letter of Censure."

24) By memorandum dated October 1, 2004, the Coast Guard determined that CDR Cacho had an "Unsatisfactory Aeronautical Adaptability."

25) By memorandum dated October 12, 2004, CAPT Taylor requested action to recover Aviation Career Incentive Pay provided to CDR Cacho for the period of November 1, 2003 through July 31, 2004.

26) On October 13, 2004, CAPT Taylor informed CDR Cacho that he was being transferred to Coast Guard Training Center, Cape May, New Jersey.

27) CDR Cacho was ordered to report to Cape May by November 15, 2004.

28) By memorandum dated October 29, 2004, the Coast Guard revoked CDR Cacho's designation as Flight Surgeon.

29) On November 16, 2004, CDR Cacho was given an adverse interim Commissioned Officer Evaluation Report ("COER").

30) By memorandum dated November 17, 2004, CDR Cacho informed the Coast Guard of his formal request to appeal the revocation of his flight surgeon status to the Aeromedical Consultation Advisory Board.

31) By memorandum dated November 23, 2004, CAPT Taylor endorsed the Coast Guard's decision to revoke CDR Cacho's flight surgeon status.

32) By memorandum dated December 3, 2004, a second endorsement of the Coast Guard's decision to revoke CDR Cacho's flight surgeon status was provided by CAPT M. J. Cristy, MLCLANT (k).

33) By memorandum dated February 28, 2005, CAPT M. K. Brown, CGPC-opm, affirmed the Coast Guard's revocation of CDR Cacho's designated flight surgeon status.

34) By memorandum dated January 10, 2005, CDR Cacho, in accordance with PHS instructions and in a timely manner, submitted a rebuttal to the adverse interim COER.

35) On December 9, 2004, the adverse interim COER was approved by RADM Higgins and entered into CDR Cacho's officer personnel file, prior to reviewing CDR Cacho's rebuttal.

36) By memorandum dated October 20, 2005, the Coast Guard informed CDR Cacho of the findings of its investigation of his HIPAA complaint.

37) The Coast Guard determined that "1. An employee committed an intentional breach of patient confidentiality by accessing your entire health record inappropriately. While it is proper to communicate minimum necessary PHI to the commanding officer when it relates to fitness for duty, your PHI was additionally communicated inappropriately to others at the A/S Miami Clinic, and then used to attempt to threaten you. 2. There appears to have been intentional, not accidental, unauthorized effort to access your PHI and then use it to threaten you."

38) The Coast Guard also stated in the memorandum that "[a]ppropriate additional disciplinary action has been taken against the employee who perpetrated the violation."

## CLAIM

### Violation of 5 U.S.C. § 552a(b)

39) 5 U.S.C. § 552a(b) provides as follows: "Conditions of disclosure. No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains…."

40) 5 U.S.C. § 552a(b)(1)–(12) provide exceptions to the rule in 5 U.S.C. § 552a(b).

41) None of those exceptions are applicable in this case.

42) The Coast Guard maintained records within the meaning of the Privacy Act regarding CDR Cacho's medical status.

43) Agents of the Coast Guard, acting for the Defendant, intentionally and unlawfully disseminated specific information covered under the Privacy Act pertaining to CDR Cacho to individuals who had no need to know this information.

44) The intentional and unlawful dissemination of this information caused CDR Cacho pecuniary loss and physical and mental suffering.

45) The United States is liable to CDR Cacho for this unlawful and intentional disclosure, as provided for under the Privacy Act.

### PRAYER FOR RELIEF

WHEREFORE, CDR Cacho prays that judgment be entered:

(a) awarding him monetary damages for the unlawful release of his records which caused him injury;

(b) awarding reasonable attorney's fees and costs of this action in accordance with the Privacy Act, U.S.C. § 552a(g)(2)(B); and

(c) such other and further relief as may, in the circumstances, be just and proper.

Respectfully submitted,

David P. Sheldon
The Law Offices of David P. Sheldon, PLLC
512 8th Street, S.E.
Washington, DC 20003
Tel: 202-546-9575
Fax: 202-546-0135


Raymond J. Toney
The Law Office of Raymond J. Toney
34-16 30th Avenue, Third Floor
Astoria, NY 11103
Tel: 718-726-3656
Fax: 661-459-0476

*Attorneys for Plaintiff*