UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIE CACHO, M.D.,                              )
 Commander, U.S. Public Health Service           )
                                                 )
                    Plaintiff,                   )        C.A. No. 1:06CV00292 (ESH)
                                                 )
                v.                               )
                                                 )
THE HONORABLE MICHAEL CHERTOFF                   )
Secretary, Department of Homeland Security       )
                                                 )
                    Defendant.                   )
_____ _____)

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant moves, pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to this dismiss this claim for

lack of jurisdiction and failure to state a claim upon which relief may be granted.  In the alternative,

defendant moves for summary judgment, pursuant to Fed. R. Civ. P. 56.  In support of this motion,

defendant attaches a Statement of Material Facts Not in Dispute and a Memorandum of Points and

Authorities in Support of the motion and supporting declarations.[1]  A proposed order is also attached.

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN , D.C. Bar # 451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney

---

[1] Although the supporting declarations have been served on plaintiff's counsel by mail, they are not being filed with the Court pending consultation with plaintiff's counsel regarding whether any portions of those affidavits should be filed under seal to protect plaintiff's privacy interests.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIE CACHO, M.D.,                          )
 Commander, U.S. Public Health Service       )
                                             )
            Plaintiff,                       )        C.A. No. 1:06CV00292 (ESH)
                                             )
            v.                               )
                                             )
THE HONORABLE MICHAEL CHERTOFF               )
Secretary, Department of Homeland Security   )
                                             )
            Defendant.                       )
_____ _____)

MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

I. Introduction and Summary of Argument

Plaintiff, Commander Willie Cacho, serves as a medical doctor with the United States

Public Health Service, assigned to the United States Coast Guard ("USCG").  From November of

1999 to September of 2004, Commander Cacho was "Flight Surgeon," Chief of the Health

Services Division of the USCG Miami, Florida, Air Station, and head of the Air Station's Clinic

which qualified pilots and other flight officers.   In September 2004, he lost his flight status after

it was discovered that he had a disqualifying medical condition, used certain disqualifying

prescription drugs for that condition, and failed to seek a medical waiver.   After further

investigations, he was permanently relieved of his assignment as "Flight Surgeon," and

transferred to another position in Cape May, New Jersey, that did not require aeronautical

adaptability.

Commander Cacho claims in this Privacy Act case that the disqualifying medical

information was disclosed improperly by Commander Alan Sokolowski, who discovered it while

preparing a Monitoring and Evaluation ("M&E") Report in connection with a Quarterly Quality

Assurance Review for Commander Stanley Gordon, the Quality Assurance Coordinator (and

Acting Chief of the Air Station Clinic at the time of the M&E Report).   Commander Sokolowski

did find during his review that Commander Cacho had failed to report a medical condition on his

medical examination and properly reported that fact to Commander Stanley Gordon, who was

then his acting superior.  He also spoke to Lieutenant Jerald Jarvi about the matter.  Lt. Jarvi was

the Aviation Physician's Assistant in the Clinic and had performed the medical examination in

question.

        After Commander Sokolowski spoke to Commander Gordon and Lieutenant Jarvi, they

notified Commander Cacho of Commander Sokolowski's discovery.  Commander Cacho

immediately sent an email to the Health and Safety program office of the USCG Headquarters

disclosing, for the first time, that he had a medical condition, explaining that he took prescription

drugs for the condition, and reporting that he was preparing to submit a medical waiver package.

Upon receipt of Commander Cacho's email, the Health and Safety office took action in

accordance with standard operating procedures to notify Commander Cacho's chain of Command

(Commanding Officer, Captain Taylor) and to initiate additional quality record reviews to

determine Commander Cacho's medical status in accordance with the Aviation Medical Manual

("A. Med. Man.") at articles 1.D.1, 12.A and 12.E.  As noted above, Commander Cacho

eventually lost his flight status and was transferred out of the Air Station because of his

disqualifying medical condition.  He also received a special interim Commissioned Officer

Evaluation Report and other actions were taken as a result of his nondisclosure of the

information in a timely manner.  As the USCG's actions were taken in accordance with the

USCG Medical Manual, the USCG Aviation Medical Manual and other rules and regulations of

the USCG, and because no violation of the Privacy Act occurred, defendant submits that

plaintiff's complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) &

(6).  Because matters outside the pleadings are being considered, defendant also moves this

Court for summary judgment pursuant to Fed. R. Civ. P. 56(C).

## II.  Statement of Facts

The Court is respectfully referred to the attached Statement of Material Facts Not in

Dispute.  Briefly stated:

### 1.     Commander Willie Cacho's Position and Status

Plaintiff Willie Cacho is a medical doctor in the United States Public Health Service and

on February 26, 1999, he was assigned and attached to the United States Coast Guard.

Complaint at  3 and 7.  In November of 1999, Commander Cacho became the "Flight Surgeon"

for Air Station Miami, Florida.  Complaint at  8.

### 2.     Flight Surgeon Status

A Flight Surgeon is a medical doctor who meets special criteria and is responsible for all

flight related medical issues at his or her assigned unit.  USCG Medical Manual Commandant

Instruction M6000.1B ("Med. Man.") at Article 1.B.3.  Attachment A; Coast Guard Aviation

Medical Manual, Commandant Instruction M6410.3 (A. Med. Man.), Article 7.A.1.a.

Attachment B.  These manuals are on line at http://cgweb2.comdt.uscg.mil/cgdirectives/cim/cim

6000_1c.pdf and http://cgweb2.comdt.uscg.mil/cgdirectives/cim/cim/ 6410_3.pdf.  Commander

Cacho was expected to adhere to all flight standards and examine all personnel in the

aeronautical fields to insure they were fit for their assigned duties. Med. Man. at 1.B.3.e and f.[2]

The Flight Surgeon must meet the same rigorous standards that pilots and other aeronautical personnel meet.  A. Med. Man. at Article 1.A.4; Med. Man. at Article 3-G.  A Flight Surgeon is expected to fly along with all flight crews to observe conditions and determine if a pilot should be grounded for a medical condition.  Med. Man. at Article 1.B.3.e and f.  Various medical conditions and the use of properly dispensed medications can be a basis for grounding. A. Med. Man. at Article 12.E.  These medical conditions and medications must be reported, but a wavier allowing continuation in a flight status can be requested in some instances. Id. at Article 12.A.  Aviation personnel in a flight status, including Flight Surgeons, are entitled to additional pay and benefits that are not authorized for persons who are not in a flight status.   Coast Guard Pay Manual, Commandant Instruction 7220.29A, Article 5.A.6.  See Attachment F.

3.    Commander Sokolowski

Commander Sokolowski is a pharmacist and he was selected by Commander Stanley Gordon, who at the time was the Quality Assurance Coordinator and Acting Chief of the Health Services Division, to complete the quarterly Quality Assurance "Monitoring and Evaluation of Health Records for Proper Procedures for Controlled Substance Prescriptions" ("M&E") pursuant to Med. Man., Article 13.H.4.  See Attachment A, hereto; see also Declaration of Alan Sokolowski ("Sokolowski Decl.")) at ¶¶ 2-5 (Attachment B, hereto); Declaration of Stanley Gordon ("Gordon Decl.")) at ¶¶ 4-5 (Attachment G, hereto); and, Declaration of Captain Taylor

---

[2]  The Coast Guard Medical Manual places responsibility for monitoring the fitness of aviation personnel for flight duty primarily on the Flight Surgeon. Med. Man at article 1.B.3.e and f.  However, any medical officer may act to recommend to the Commanding Officer that a person be relieved from flight duty. A. Med. Man. at article 1.D.1.

("Taylor Decl.")) at ¶ 4 (Attachment D, hereto).  This Quality Assurance exercise required a review of individual medical records, and Commander Cacho's record met the criteria for review. Id.; Sokolowski Decl. at ¶ 4.

Commander Sokolowski's review of Commander Cacho's medical record showed that Commander Cacho failed to disclose medical conditions and medications which would have grounded him and would have at least temporarily removed him from flight status and his duties as Flight Surgeon at Air Station Miami.  Sokolowski Decl. at ¶¶ 4-5.  Commander Sokolowski, as a member of the medical staff at the Air Station Miami clinic, was authorized to review any medical record in its entirety.  Med. Man. 4.A.1.a.6.  Commander Sokolowski may have reviewed pages beyond the minimum required for the quality assurance exercise.  Taylor Decl. at ¶ 5.  But, as noted above, even if Commander Sokolowski had not been assigned the quality assurance exercise, he had authority as a medical care provider at the Air Station Miami Clinic to review medical records held there [Taylor Decl. at ¶ 6 (Att. D); Med. Man. at article 4.A.1.a.6. (Att. A)] and to recommend that an individual be relieved from flight duty [A. Med. Man. at Article 1D.1(Att. B)].[3]

Commander Sokolowski, in the process of performing the M&E exercise, discovered that Commander Cacho's most recent medical examination failed to reflect a medical condition for which he had been filling prescriptions.  Sokolowski Decl. at ¶ 5.  He brought this to Commander Gordon's attention [Id.] and spoke to Lt. Jarvi, the Aviation Physician's Assistant

---

[3] During 2004, Commander Cacho officially counseled Commander Sokolowski, on his performance of duties.  Complaint at  9.  Therefore, Commander Cacho believes Commander Sokolowski had malicious intent when he discovered the medical discrepancies.  As Commander Sokolowski clearly made no improper disclosures, his intent plays no role in the resolution of this action.

and the individual administering the subject medical examination. Id. at ¶ 6.  Thereafter, Commander Gordon and Lt. Jarvi notified Commander Cacho of Commander Sokolowski's discovery. Gordon Decl. at ¶ 6; Taylor Decl. at ¶ 7.

Commander Cacho, who was away on temporary duty elsewhere, immediately sent an email to Commander Mary Fong and Commander Patrick Marshal in the Health and Safety program office of the USCG Headquarters and Maintenance and Logistics Command, Atlantic, respectively.  In the email, Commander Cacho disclosed, for the first time to a superior, that he had a medical condition, explained that he took prescription drugs for the condition, and reported that he was preparing to submit a medical waiver package.  He also complained that Commander Sokolowski had violated his HIPPA and Privacy Act rights.  Attachment H (Att. H is not included as an attachment to this file.  Defendant will seek to file it under seal to protect personal privacy. See LCvR 5.4(f) (ECF Privacy Requirements).

Commander Sokolowski's "disclosures" were only to Commander Gordon, the Quality Assurance Coordinator, who was also Acting Chief of Health Services/Acting Chief of the Air Station Clinic in Commander Cacho's absence; Lt. Jarvi, who was Aviation Physician's Assistant to Commander Cacho and his treating physician for his then most recent physical examination; and later to his Commanding Officer, Captain Taylor as set forth below. Sokolowski Decl. at ¶¶ 5-6; Taylor Decl. at ¶ 7.

After Commander Cacho sent the email concerning his condition to the Health and Safety program office, that office notified his Commanding Officer, Captain Keith Taylor.  Captain Taylor then called Commander Gordon, Lt. Jarvi and Commander Sokolowski into his office to discuss the matter with his Executive Officer, Commander Michael Andres. Id at ¶7: Andres

Decl. at Attachment E, ¶ 4.

In the Coast Guard organization, there are two levels of command above the Air Station that are responsible for aviation health issues, those are the Health and Safety program at Coast Guard Headquarters, Washington, DC, and the Health and Safety program at Maintenance and Logistics Command, Norfolk, VA. Both of those senior levels of command became involved in addressing the issues raised by Commander Cacho's email. In consultation with officials at those senior commands, Captain Taylor requested that the Health and Safety program personnel at Maintenance and Logistics Command review Commander Cacho's fitness for flight duty. In connection with that, Commander Andres was directed to review Commander Cacho's medical record and to make a copy for the Maintenance and Logistics Command. Andres Decl. at ¶ 5.

4.    <u>Results of Administrative Actions</u>

As a result of Commander Cacho's notification of the Health and Safety program office at Coast Guard Headquarters, multiple administrative actions were initiated: some addressed Commander Sokolowski's alleged insubordination and his accessing Commander Cacho's medical records; some addressed Commander Cacho's medical condition and medication, and his failure to timely report them. Complaint at  16, 17, 18, 19, 20, 21, and 36; Andres Decl. at ¶ 6.

Initially, Commander Cacho had his aviation medicine privileges temporarily suspended, Complaint,  15, and was temporarily suspended from his position as Chief, Health Services Division, Air Station Miami, Complaint,  22. Later, his Flight Surgeon status was revoked, Complaint,  28, he received a special interim Commissioned Officer Evaluation Report, Complaint,  29, and he was required to return Aviation Career Incentive Pay he received while he had disqualifying medical conditions, Complaint,  25. Because Commander Cacho was no

longer qualified for the billet he filled at Air Station Miami, he was transferred to Cape May,

New Jersey, where his lack of flight credentials would not interfere with his ability to practice

medicine and provide medical services not related to flight status.  Complaint,  26, Declaration

of Captain Taylor.  As more fully set forth below, Captain Taylor lost confidence and trust in

Commander Cacho's actions in intentionally failing to disclose his condition:

> Commander Cacho was my Flight Surgeon and was responsible for all health
> issues involving my pilots and air crews.  This is a very prestigious and important
> job and it must be filled by a person that has the full trust and confidence of the
> Commanding Officer.  My investigations determined that Commander Cacho
> knew the rules for disclosure and intentionally did not disclose his situation.
> Because of this nondisclosure, he was determined by Headquarters' Health and
> Safety officials to have unsuitable aeronautical adaptability, and as such was not
> qualified to be in a flight status.  Because of that unsuitability he was also no
> longer authorized to provide aviation medical services to Coast Guard personnel.
> Coast Guard Personnel Command, following a review process, revoked
> Commander Cacho's Flight Surgeon designation.  By the time all of these
> administrative and investigative actions were complete, I had lost confidence in
> Commander Cacho and had him temporarily removed as my Chief, Health
> Services Division.  Because he could no longer fulfill flight surgeon
> requirements, the Coast Guard Personnel Command eventually transferred
> Commander Cacho to a non-aviation assignment at Training Center Cape May.  I
> also documented Commander Cacho's failure to disclose his medical condition
> and medications in a special interim Commissioned Officer Evaluation Report
> and had his payroll records audited to correct the period of time he was entitled to
> Aviation Career Incentive Pay.

Taylor Decl. (Attachment D) at ¶ 11.

### III.  ARGUMENT

### Summary of Argument

Commander Cacho's complaint alleges that his action is brought under 5 U.S.C. §

552a(b), the Privacy Act, to obtain monetary damages for unlawful disclosures of his personal

health information.  Complaint at 1.  Specifically, he alleges that his personal health information

was unlawfully disclosed by Commander Sokolowski to Captain K.A. Taylor, Commanding

8

Officer, Air Station Miami, and Commander M.J. Andres, Executive Officer Air Station Miami. Complaint, 12. However, Captain Taylor and Commander Andres learned of plaintiff's disqualifying medical condition as a result of an email from plaintiff directed to the USCG Health & Safety program office, not from information supplied by Commander Sokolowski. Taylor Decl. at ¶ 7; Andres Decl. at ¶ 3. But even if they had learned about plaintiff's medical condition through Commander Sokolowski, as they were the Commanding Officer and the Executive Officer of the Air Station charged with the administration of the flight program and plaintiff's first and second line superiors, they clearly had a need to know. See Taylor Decl. at ¶¶ 1, 8, 10-11; Andres Decl. at ¶ 2; see also Bigelow v. DOD, 217 F.3d 875 (D.C. Cir. 2000). Moreover, any member of Captain Taylor's medical team that identified a mistake, omission or lack of documentation had an obligation to investigate as far as necessary and to then report the item to their chain of command. Taylor Decl. at ¶ 6; A. Med. Man., Article 1.D.1. Therefore, once Commander Sokolowski identified the problem concerning Commander Cacho's medications and medical condition, he was expected to report the issue and seek a proper resolution. Taylor Decl. at ¶ 6.

Commander Cacho also alleges that Commander Sokolowski disclosed his personal health information to other unidentified individuals. Complaint, 13. However, the only "other individuals" the Coast Guard knows of are Commander Stanley Gordon and Lieutenant Jerald Jarvi both of whom were authorized to access personal health information as health care providers, and quality assurance and medical records personnel, and to the extent that they knew of Commander Cacho's condition, had a requirement to report it as well. See Med. Man. at Article 4.A.1.a.6 and A. Med. Man. Article 1.D.1.

9

A.    <u>Standard of Review.</u>

　　1.  <u>Fed. R. Civ. P. 12(b)(1)</u>.

Under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing that the

Court has jurisdiction. "[A] Rule 12(b)(1) motion imposes on the court an affirmative obligation

to ensure that it is acting within the scope of its jurisdictional authority." <u>Fowler v. District of</u>

<u>Columbia</u>, 122 F.Supp.2d 37, 39 (D.D.C. 2000). If jurisdiction has not been established, the

Court must dismiss the action. In determining the scope of the jurisdiction, it is sometimes

necessary for the court to look to matters outside the pleadings. <u>Battle v. Rubin</u>, 121 F.Supp.2d

4, 6 (D.D.C. 2000); <u>Fowler</u>, 122 F.Supp.2d at 40.

　　2.  <u>Fed. R. Civ. P. 12(b)(6)</u>.

"[A] complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." <u>Thomas v. City Lights School, Inc., et al.</u>, 124 F.Supp.2d 707, 708 (D.D.C.

2000) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  Plaintiff's factual allegations

must be accepted as true when reviewing the adequacy of the complaint pursuant to Fed. R. Civ.

12(b)(6). <u>Hill v. City of New York</u>, 45 F.3d 653, 657 (2d Cir. 1995).  A Rule 12(b)(6) motion

may be converted into a summary judgment motion pursuant to Fed. R. Civ. P. 56 when matters

outside the pleadings are considered.

　　3.  <u>Fed. R. Civ. P. 56(C)</u>.

Under Fed. R. Civ. P. 56, a motion for summary judgment shall be granted if the

pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that

there is no genuine issue of material fact, and that the moving party is entitled to judgment as a

matter of law. <u>Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248</u> (1986).   In considering a

motion for summary judgment, the "evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor." <u>Id.</u> at 255.   The non-moving party's

opposition must consist of more than mere unsupported allegations or denials and must be

supported by affidavits or other competent evidence setting forth specific facts showing that

there is a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

324 (1986). The non-moving party must provide evidence that would permit a reasonable jury to

find in the non-moving party's favor. <u>Laningham v. U.S. Navy</u>, 813 F.2d 1236, 1241

(D.C.Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." <u>Liberty Lobby</u>, 477 U.S. at 249.

     B.  <u>The Privacy Act.</u>

     The Privacy Act, 5 U.S.C. § 552a, governs federal agencies' maintenance of records

pertaining to individuals.  <u>See also</u> <u>Henke v. United States Dept of Commerce</u>, 83 F.3d 1453,

1456-57 (D.C. Cir. 1996). A "record" within the meaning of the Act refers to information that is

"about an individual," that is maintained within a "system of records" of an agency, and that is

retrieved from that system through use of a person's name or other personal identifier.  5 U.S.C.

§ 552a(a)(4), (a)(5).  If an agency discloses a record in violation of the Privacy Act "in such a

way as to have an adverse effect on an individual," and if the "agency acted in manner which

was intentional or willful," then that individual may recover "actual damages."  5 U.S.C. §

552a(g)(1)(D), (g)(4), (g)(4)(A).  Among its proscriptions, the Act provides that "[n]o agency

shall disclose any record which is contained in a system of records by any means of

communication to any person" without the individual's consent, subject to certain exceptions.  5

11

U.S.C. § 552a(b).  The section 552a(b) exceptions include intra-agency disclosure to persons

having a need for the information in the performance of their duties, i.e., with "a need to know."

See 5 U.S.C. § 552a(b)(1).[4]

     A plaintiff has the burden of demonstrating that an improper disclosure by the agency has

occurred.  See, e.g., Askew v. United States, 680 F.2d 1206, 1209-11 (8th Cir. 1982); Zerilli v.

Smith, 656 F.2d 705, 715-16 (D.C. Cir. 1981); cf. Brown v. Snow, 94 Fed. Appx. 369, at *3 (7th

Cir. 2004) (ruling that district court grant of summary judgment was proper where no evidence

was found that record was disclosed, and stating that "burden is on the plaintiff at the summary

judgment stage to come forward with specific evidence").

     C.  Prima Facie Case under the Privacy Act.

     In order to make out a prima facie case for an improper disclosure of information in

violation of the Privacy Act, a plaintiff must establish that:  "(1) the disclosed information is a

'record' contained with a 'system of records';   (2) the agency improperly disclosed the

information; (3) the disclosure was willful or intentional; and (4) the disclosure adversely

affected the plaintiff."  Logan v. Department of Veterans Affairs, 357 F.Supp.2d 149, 154

(D.D.C. 2004) (citing Fisher v. National Institutes of Health, 934 F. Supp. 464, 468, (D.D.C.

1996)), aff'd, 107 F.3d 922, 1996 WL 734079 (D.C. Cir. 1996).   For the purpose of this motion,

---

     [4] "The meaning of the statute must, in the first instance, be sought in the language of the
statute itself.  If the language is clear and unambiguous, a court must give effect to its plain
meaning."  Grachow v. United States Customs Service, 504 F. Supp. 632, 634 (D.D.C. 1980).
As a waiver of sovereign immunity, the Privacy Act is to be strictly construed in favor of the
sovereign.  See United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992); Library of
Congress v. Shaw, 478 U.S. 310, 318 (1986); McMahon v. United States, 342 U.S. 25, 27
(1951).  The construction of the statute favoring the sovereign must be followed as long as it is
"plausible."  Nordic Village, 503 U.S. at 37.

it is assumed that plaintiff is able to establish that Commander Cacho's medical information that is the subject of this litigation is in a "system of records."

      D.  <u>Commander Cacho Cannot Establish the Remaining Elements of a Prima Facie Case.</u>

    Summary judgment is appropriate in a Privacy Act case if plaintiff is unable to establish even one of the four elements listed above. <u>See</u> <u>Freeman v. EPA</u>, 2004 WL 2451409 at *3 (D.D.C. 2004), citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322; <u>see also</u> <u>Logan</u>, 357 F.Supp.2d at 152-54.

      1.  <u>Plaintiff Cannot Establish that there was an Improper Disclosure.</u>

    Commander Sokolowski's disclosure of such information to other medical and command staff at Air Station Miami, was proper and in accordance with Med. Man. Article 4.A.1.a.6. and Article 4.A.3.c. Thus, it was authorized under the Privacy Act.

    An agency may disclose Privacy Act protected records to "officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). This Court has recognized that an agency may use Privacy Act protected records when making personnel decisions. <u>Bigelow v. DOD</u>, <u>supra</u>; <u>Blazy v. Tenet</u>, 979 F. Supp. 10, 26 (D.D.C 1997), <u>sum. aff. granted</u>, No. 97-5330, 1998 WL 315583 (D.C. Cir. May 12, 1998); <u>Pippinger v. Rubin</u>, 129 F.3d 519, 529-31 (10th Cir. 1997).

    In this case, as disclosures were made to agency officials who had a "need to know," plaintiff cannot establish that an improper disclosure occurred. Commander Gordon was assigned quality assurance responsibilities and directed Commander Sokolowski to conduct the quality assurance exercise during which Commander Sokolowski obtained Commander Cacho's personal health information. Gordon Decl. at ¶ 5; Sokolowski Decl. at ¶ 2. The personal health

information that Commander Sokolowski disclosed to Commander Gordon legitimately raised

quality assurance concerns, in addition to fitness for duty concerns.  Id.  Lieutenant Jarvi had

diagnosed Commander Cacho's medical condition in 2002 and signed a flight physical in

November 2003 that omitted any reference to the ongoing condition.  Id.  Lieutenant Jarvi

arguably had prior knowledge of the personal health information based on his treatment of

Commander Cacho and the information disclosed to him by Commander Sokolowski

legitimately raised quality assurance concerns, in addition to fitness for duty concerns.  Id.

Captain Taylor and his Executive Officer, Commander Andres, the top leadership of the Air

Station, learned of their Flight Surgeon's medical condition as a result of the email he

transmitted to members of the Health and Safety program office.  Clearly, they had a need to

know as the highest ranking officers at the Miami Air Station who were responsible for insuring

that the Air Station was operating safely and within USCG medical guidelines and other

regulations.

        The "need to know" exception authorizes the intra-agency disclosure of a record for

necessary, official purposes.  See OMB Guidelines, 40 Fed. Reg. 28,948, 28,950-01, 28,954

(July 9, 1975).  The Privacy Act's legislative history indicates an intent that the term "agency" be

given "its broadest statutory meaning," and it recognizes the propriety of "need to know"

disclosures between various components of large agencies. See e.g., 120 Cong. Rec. 36,967

(1974).

        Cases from this and other circuits are replete with examples of proper intra-agency "need

to know" disclosures.  See, e.g., Bigelow, 217 F.3d at 876-78 (review of plaintiff's personnel file

by immediate supervisor in connection with supervisor's "continuing duty to make sure that

[plaintiff] was worthy of trust" was proper; supervisor "had a need to examine the file in view of the doubts that had been raised in his mind about [plaintiff] and [plaintiff's] access to the country's top secrets"); Freeman, 2004 WL 2451409 at *4-5 (DOD agent hired to investigate allegations of drug use and an attempt to evade drug testing would be considered an agency official for purposes of the (b)(1) exception); McCready v. Principi, 297 F. Supp. 2d 178, 197 n.11 (D.D.C. 2003) (although not specifically citing subsection (b)(1), finding that "limited distribution of [a memorandum concerning plaintiff] to those [within the agency] with a legitimate need to know did not violate [plaintiff's] rights under the Privacy Act"); Hanna v. Herman, 121 F. Supp. 2d 113, 123-24 (D.D.C. 2000) (disclosure of information by agency official about plaintiff's demotion to another supervisor was covered by "need to know" exception even though that supervisor was not within same office), sum. aff. sub nom. Hanna v. Chao, No. 00-5433 (D.C. Cir. Apr. 11, 2001); Blazy v. Tenet, 979 F. Supp. at 26 (disclosure of the status of plaintiff's security investigation to his supervisor and disclosure of records needed by members of Employee Review Panel responsible for assessing plaintiff's employment performance and prospects was proper), sum. aff., Appeal No. 97-5330, 1998 WL 315583 (D.C. Cir. May 12, 1998); Mount v. USPS, 79 F.3d 531, 533-34 (6th Cir. 1996) (disclosure of information in plaintiff's medical records to other employees "with responsibilities for making employment and/or disciplinary decisions regarding plaintiff" was proper; "In light of the questions surrounding plaintiff's mental stability, each had at least an arguable need to access the information in plaintiff's medical records."); Britt v. Naval Investigative Service, 886 F.2d 544, 549 n.2 (3d Cir. 1989) (disclosure of investigative report to commanding officer approved "since the Reserves might need to reevaluate Britt's access to sensitive information or the level of

15

responsibility he was accorded"); Khalfani v. Sec'y, VA, No. 94-CV-5720, 1999 WL 138247, at

**7-8 (E.D.N.Y. Mar. 10, 1999) (disclosure of plaintiff's medical records within VA was proper

so that his supervisor could document his request for medical leave and determine the level of

work he could perform), appeal dismissed for appellant's failure to comply with scheduling

order, No. 99-6157 (2d Cir. Oct. 10, 2000); Jones v. Dep't of the Air Force, 947 F. Supp. 1507,

1515-16 (D. Colo. 1996) (Air Force investigator's review of plaintiff's medical and mental health

records and publication of statements about the records in report of investigation compiled in

preparation for plaintiff's court-martial, distributed to certain Air Force personnel was proper);

Hass v. United States Air Force, 848 F. Supp. 926, 932 (D. Kan. 1994) (disclosure of mental

health evaluation to officers who ultimately made decision to revoke plaintiff's security clearance

and discharge her was proper); Lennon v. Rubin, 166 F.3d 6, 10 (1st Cir. 1999) (citing

subsection (b)(1) and finding that district court correctly granted summary judgment to

defendant where, despite memorandum indicating intent to distribute information to task force

that included individuals from outside agency, agency employee testified that she actually gave

information only to a member who was agency employee and recipient employee declared that

she had never given information to other task force members.  Daly-Murphy v. Winston, 837

F.2d 348, 354-55 (9th Cir. 1988) (disclosure of letter suspending doctor's clinical privileges to

participants in peer-review proceeding was proper).

In this case, Commander Sokolowski was assigned responsibility for a quality assurance

review of medical records.  Additionally, as the Air Station Miami clinic pharmacist, he was an

authorized user of the complete medical record of the plaintiff.  Med. Man at Article 4.A.1.a.6.

He also had authority to review the medical records of all patients to whom he provided drugs.

Med. Man. at Article 10.A.4.a.  During the quality review, Commander Sokolowski found inaccurate record keeping and informed the Quality Assurance Coordinator, Commander Gordon, who was a member of the medical staff at the air station.  He also informed the medical care provider for the plaintiff, Lt. Jarvi.  These disclosures are authorized intra-agency uses of the personal health information under the Privacy Act.  5 U.S.C. § 552a(b)(1).  The Quality Assurance Coordinator informed the plaintiff of the incomplete records and the plaintiff almost immediately informed the Health and Safety program office at USCG Headquarters.  As a result of plaintiff's own disclosure, the Health and Safety program office initiated appropriate administrative responses by informing Commander Cacho's Commanding Officer, Captain Taylor, of the fitness for duty issue concerning Commander Cacho and alleged misconduct by Commander Solokowski.  As noted, these administrative actions were the result of plaintiff's notification of the Health and Safety program officials, rather than any disclosure by Commander Sokolowski.

In sum, plaintiff disclosed his medical condition and use of medications when it became apparent to him that Commander Sokolowski believed that these facts should be reported to those in authority.  Regardless of Commander Sokolwski's intent and motivation, it was plaintiff, not Commander Sokolowski, who disclosed the information that resulted in the loss of his flight status, his transfer, and the other administrative actions that happened.  Even if Commander Cacho had remained silent, the regulations required that Commander Sokolwski report his findings within the chain of command.  See A. Med. Man., Article 1.D.1.

2.    There Was No Willful and Intentional Disclosure by the Defendant

At all times, plaintiff has the burden of demonstrating that a disclosure by the agency has

17

occurred and that it was 'intentional or willful.'  5 U.S.C. § 552a(b), (g)(4); <u>Laningham v. Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (quoting <u>Albright v.United States</u>, 732 F.2d 181, 189 (D.C. Cir. 1984)); <u>see</u> <u>also</u> <u>Dickson v. OPM</u>, 828 F.2d 32, 33 (D.C. Cir. 1987) (remanding for determination whether Privacy Act plaintiff carried burden of showing intentional or willful government violation).

 "An agency acts in an intentional or willful manner 'either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding other's rights under the Act.'" <u>Deters v. United States Parole Comm'n</u>, 85 F.3d 655, 660 (D.C. Cir. 1996)(quoting <u>Albright</u>, 732 F.2d at 189).  Before the character of the release may be addressed, it must first be determined whether the agency is responsible for that release.  "Under Section 552a(g)(1)(D) liability is predicated on an agency's 'failure to comply' with the Privacy Act."  <u>Albright</u>, 732 F.2d at 189. In other words, the predicate showing of agency failure must be established before the issue of whether that failure was intentional or willful becomes relevant.  Accordingly, unless Commander Cacho can first establish that any disclosure not within the "need to know" exception was made by Commander Sokolowski in the scope of his employment, the intentional or willful character of the release never becomes relevant.  Any impure motivation on Commander Sokolowski's part is irrelevant where the Coast Guard Medical Manual and the Coast Guard Aviation Medical Manual authorized access to the personal health information, based on his quality assurance and medical care provider duties, and authorized disclosure of the information because of its relevance to both quality assurance issues and fitness for flight status issues.  Regardless, plaintiff has failed to allege any facts that any of defendant's employees acted in any manner other than consistent with their assigned duties.  There are simply no facts

18

alleged that they acted without grounds for believing their actions were lawful or in flagrant disregard for Commander Cacho's rights.

     3.  <u>Commander Cacho Cannot Establish Actual Damages by the Alleged Disclosure.</u>

     Even if Commander Cacho could prove that the Coast Guard had disclosed his personal health information in violation of the Privacy Act, and defendant does not concede that he can, he would have to prove that the disclosure caused him to suffer actual damages.  <u>Doe v. Chao</u>, 540 U.S. 614 (2004).  Commander Cacho alleges that the Coast Guard took various administrative actions against him following the disclosure by Commander Sokolowski of his personal health information, <u>e.g.,</u> loss of flight status and action to recover Aviation Career Incentive Pay.  <u>See</u> <u>e.g.</u>, Complaint at 22, 25, 28, 29.  However, those administrative actions were not caused by any improper disclosure of Commander Cacho's personal health information, rather they were caused by Commander Cacho's notification of the Health and Safety program office at Coast Guard Headquarters that he had failed to report in a timely manner that he had a medical condition and was taking medications that disqualified him from flight status.

     In <u>Albright</u>, <u>supra</u>, this Circuit recognized that the Privacy Act is not intended to shield agency employees from the vicissitudes of federal personnel management actions.  732 F.2d at 190.  In that case, the Court found that the district court was correct in holding that the alleged actual damages were caused by the agency personnel management actions rather than the Privacy Act violation.  <u>Id.</u> at 186-88; <u>Mandel v. OPM</u>, 244 F.Supp.2d 146 (E.D.N.Y. 2003)(plaintiff "has the burden of establishing a causal connection between the agency violation and the alleged adverse effect"; plaintiff's "acts of omissions and falsifications caused him to suffer emotional distress and pecuniary loss, not the disclosure").

19

Commander Cacho also generally alleges pecuniary loss and physical and mental suffering as a result of the alleged Privacy Act violation. To the extent that Commander Cacho can establish such actual damages and they are compensable under the Act, he has offered nothing to suggest that such pecuniary loss and physical and mental suffering was caused by Commander Sokolowski's disclosure rather than the administrative actions he describes in his complaint. See Complaint at  15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 31, 32, 33, and 35. Those administrative actions were caused by Commander Cacho's medical condition and medications which disqualified him from flight status, and from his failure to timely report his medical condition and medications. The administrative actions were initiated based on Commander Cacho's email to Health and Safety program officials at Coast Guard Headquarters, not because of Commander Sokolowski's alleged disclosures.

In view of the substantial administrative consequences of Commander Cacho's medical condition, and his omissions and actions related to his fitness for flight status, which immediately overtook any disclosure by Commander Sokolowski, it is simply not credible to suggest that Commander Cacho can offer anything to show that his pecuniary loss and physical and mental suffering was caused by the disclosure rather than the administrative actions.

For those reasons, Commander Cacho's damages allegations fail to meet the Privacy Act's causation requirements, and the Coast Guard is entitled to judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, defendant respectfully requests that the complaint in this case be dismissed or summary judgment entered in defendant's behalf.

Respectfully submitted,

20

_____/s/_____
KENNETH L. WAINSTEIN , D.C. Bar # 451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

OF COUNSEL:

ROBERT BRUCE, Esq.
Attorney, Office of Claims and Litigation
U.S. Coast Guard

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing motion, memorandum in support thereto, statement of

material facts not in dispute and proposed order have been served by e-filing and the

accompanying affidavits have been served by first class mail postage pre-paid to:


David P. Sheldon
The Law Offices of David P. Sheldon, P>L>L>C.
512 8th St., SE
Washington, DC 20003

this 27th day of June 2006

_____
CLAIRE WHITAKER
Assistant U.S. Attorney
555 4th St., N.W.  Room E-4204
Washington, DC 20530
202-514-7137