**EXHIBIT 1**

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commanding Officer
United States Coast Guard
Aviation Training Center

8501 Tanner Williams Road
Mobile, AL 36608-8322
Staff Symbol: hsd
Phone: (251) 441-6878
Fax: (251) 441-6926
Email: pstewart-kuhn@atc.uscg.mil

6000
7 June 2004

# MEMORANDUM

From:

Reply to
Attn of:

To:

Via:

Subj:

1. A Pharmacy Quality Assurance assist visit was conducted at AIRSTA Miami on May 26-27, 2004. This visit came at the request of the Command, and the Chief, Health Services Division.

2. The MLCLANT Quality Assurance checklist was used as a guideline for this visit. The following items are requirements of the QA checklist, and need to be corrected to conform with current guidelines and standards.

   a. (J.2) The pharmacy policy and procedure manual does not reflect current practice. This document should be reviewed and revised. Items not currently reflected in this document include the returned goods program for expired pharmaceuticals; procedures for CHCS computer entry; double count procedures on controlled substance prescriptions, and the perpetual list of controlled substance prescriptions. Recommend a three-month timeframe for the completion of this update.

   b. (J.6.a) A review of the clinic formulary was conducted. This document does not reflect current medications stocked in the pharmacy. Update should be completed within three months. The formulary should then be reviewed and revised on a six-month schedule.

   c. (J.6.b) The clinic does not have a HS Formulary. A template of a prior clinic HS formulary was located. This document can be used to create a new HS formulary. A second option would be to indicate the HS Formulary items in the "comments" section of the current formulary. Update should be completed within three months. The HS Formulary should then be reviewed and revised on a six-month schedule.

   d. (J.8) Unauthorized individuals, including family members, should not permitted unaccompanied access to restricted areas of the clinic, including the pharmacy.

   e. (J.10) Expired medications were found in the urgent care, crash cart, night locker, and clinic exam rooms. Medications in all areas of the clinic are responsibility of the pharmacy. The crash cart needs to be inspected each month to ensure all items are accounted for, and expired medications are removed and replaced. The clinic "night locker" should be removed from the crash cart. These items need to be labeled IAW Chapter 10 of the Medical Manual. Items currently stocked in the night locker should be reviewed and revised. Expired medications were removed from exam rooms and will need to be replaced. The crash cart and night locker should be reviewed and revised within three months. All spaces should be inspected on a monthly basis.



ENCLOSURE ( 23 )

Subj: PHARMACY QUALITY ASSURANCE ASSIST VISIT        6000

7 June 2004

f. (J.14) The "special order" list is not current. Reviewed procedures for generating a product activity report (PAR) and drug utilization report (DUR) in CHCS. These reports will assist in the completion of the "special order" list. List should be updated within three months, and revised on a six-month schedule.

g. (J.23) Controlled substance inventories are being conducted as required, but are not on a regular 4-5 week basis. Recommend the Command appoint a senior member of the audit board to be a central point of contact for the pharmacy. Recommend that ▮▮▮▮▮▮▮▮ the audit board determine a regular schedule (i.e. first Wednesday of each month) to conduct the narcotic audits.

h. (J.27) All prescriptions for schedule II controlled substances should be lined through and initialed by the individual posting the transaction. This item was noted b▮▮▮▮▮▮▮▮d should be implemented immediately.

i. (H)▮▮▮▮▮▮▮▮as not performed any pharmacy monitoring and evaluation (M&E) exercises for the year, as required. Discussed and reviewed available M&E exercises, procedures for completing drug utilization reports (DUR) to find appropriate patients, and procedures to complete the M&E.

j. (D) The pharmacy is not currently stocking the required amounts of CBR pharmaceuticals, IAW the HSAL Part 1. ▮▮▮▮▮▮▮ is to order the needed quantities of Cipro 500mg tablets and Amoxicillin 250mg chewable tablets within the next week. Stocks of CBR pharmaceuticals should be stored in a separate area of the pharmacy from regular working stock.

3. The following items were noted and reviewed with ▮▮▮▮▮▮▮▮These represent areas where improvements are needed:

a. I have concerns with the customer service being provided at the pharmacy. During the visit, a patient requested a refill on her medication. ▮▮▮▮▮▮▮▮refused to process the refill. He informed the patient that the pharmacy policy required that all patients call ahead for refills, and that he could not violate this policy. I discussed this issue with▮▮▮▮▮▮▮and reminded him that customer service is paramount. If his policy inhibits the provision of patient care, it should be re-evaluated.

b. The P&T Committee Meetings are being held and documented on a quarterly basis. However, the scope and content of the minutes is rather limited. It is recommended that changes in Coast Guard policies relating to pharmacy be discussed and documented at these meetings. Examples include the changes to the civilian pharmacy benefit, and the new Hepatitis B immunization program.

c. The Controlled Substance audits and processes were reviewed. It is recommended that items no longer stocked be removed from the audit form CG 5353. All records should be kept for three years.

d. The pharmacy is currently providing patients a full copy of the clinic formulary upon their request. However, this document is several pages long, and contains notes such as "active duty personnel only" which could generate customer complaints. Recommend providing a one-page formulary for patients to take with them. A template will be provided via E mail.

e. Reviewed the vaccines in the lab, which are ordered by the pharmacy. There were a number of vials getting ready to expire. These should be transferred to another DOD or Coast Guard facility for use if at all possible. In addition, there were several vaccines currently stocked with vials from two manufacturers for the same product. Recommend▮▮▮▮▮▮▮ducate the lab tech/HS staff that vaccines are sometimes manufactured by different companies under different names, but are the same product. (i.e. Engerix and Recombivax are both brands of Hepatitis B vaccine)

Subj: PHARMACY QUALITY ASSURANCE ASSIST VISIT    6000
7 June 2004

4.  The following are recommendations for improving workflow and job performance.
    a.  The pharmacy manuals and various Coast Guard publications were reviewed. Many items had out of date instructions and manuals, which have now been discarded. The pharmacy has ready access to all current health care publications via printed copy in the pharmacy, as well as via the G-WKH website.
    b.  A copy of the MLCLANT Pharmacy Collateral Duty Responsibility letter for AIRSTA Miami was not available. A copy of this document, which outlines ███████████ obligations to outlying units, was requested from ████████████████. Upon discussion with ██████████████████████, they have been receiving adequate pharmacy officer support from ██
    c.  Performed a comprehensive review of CHCS pharmacy module reports and menus. ████████████ not have access to the pharmacy cost reports (KPR) or ad-hoc labels (LAB). The clinic CHCS administrator enabled access to these menus on Thursday morning. Reviewed and processed the following reports with █████████████ pharmacy cost reports (KPR) by drug cost, number of prescriptions filled, and patient category; creating ad-hoc labels (LAB) for pre-packing night locker medications; volume summary report (VSR); product activity report (PAR) to determine quantities of items used; DEA reports for controlled substance tracking; drug utilization reviews (DUR) for processing monitoring and evaluation exercises; and formulary maintenance menus (FOM). Copies of these reports were left with █████████████ for easy reference.
    d.  Reviewed the current prime vendor ordering system with Cardinal. Discussed that the contract is up for reissue this summer, and information has been disseminated from ██████████ at G-WKH-2. Currently ███████████ uses a "stand alone" computer with modem to send his Cardinal orders. However, Cardinal has instituted Internet based ordering, which ████ is using for his remote units. Recommend that ████ request that Cardinal load the AIRSTA Miami account on to the Internet system, and the ████████ account be reactivated. The pharmacy can then discontinue the use of the stand-alone computer. This will allow the use of Internet based ordering for all units, and free up some space in the pharmacy when the computer is gone.
    e.  Discussed prime vendor Internet based ordering for ISC Miami with ████████ clinic administrator at ████████████████████. Recommend ISC Miami, under the supervision of ████████████ be allowed to place their own Internet orders for pharmaceuticals, as they manage their own clinic budget. ████████████ can provide oversight of ordering during his weekly visit to ████████ or via the Internet website. ████████████ will need access to the Cardinal website, and training on the ordering system.
    f.  Provided an Internet link to the DOD Pharmacoeconomic Center (PEC) website. Printed out a copy of the most recent Basic Core Formulary (BCF) for reference.
    g.  Currently ███████████████ having another individual countersign all of his narcotic transactions. This is not required under any Coast Guard guidelines, but can be continued at ███████████████ discretion.

5.  Please contact me if you have any questions concerning the quality assurance assist visit. Thank you for the opportunity to assist your clinic.

#

CONFIDENTIAL

3

Subj: PHARMACY QUALITY ASSURANCE ASSIST VISIT   6000
7 June 2004

CONFIDENTIAL

# EXHIBIT 2

CONFIDENTIAL



**U.S. Department of Homeland Security**

Commanding Officer (kh)
U.S.C.G. Integrated Support
100 Mac Arthur Causeway
Miami Beach, FL 33139

14750 NW 44th Crt.
Opa Locka Fl., 33054
305-953-2263

To whom it may concern:

I over heard Cmdr. A. Sokolowski say " Fuck you Willie, I can get you on that." The approximate date and time I do not remember.

PO J. Weimer

CONFIDENTIAL

# EXHIBIT 3

CONFIDENTIAL

**Cacho, Willie CDR**

From:
Sent:                                   2004 11:22 AM
To:
Subject:                  RE: Urgent

J,

Willie

-----Original Message-----
From:
Sent:                           2004 11:06 AM
To:
Subject:     RE: Urgent

I'll do as you say.

-----Original Message-----
From:
Sent:                     10:46 AM
To:
Subject: RE: Urgent

-----Original Message-----
From:          Gordon, Stanley CDR
Sent:          Thursday, July 01, 2004 10:35 AM
To: Cacho, Willie CDR
Subject:       FW: Urgent

FYI

-----Original Message-----
From:
Sent:          Thursday, July 01, 2004 7:05 AM
Subject:

CONFIDENTIAL

# EXHIBIT 4

CONFIDENTIAL

**U.S. Department of
Homeland Security**

**United States
Coast Guard**

Commandant
United States Coast Guard

2100 Second Street, S.W.
Washington, DC 20593-0001
Staff Symbol: CG-1122
Phone: (202) 267-0801
Fax: (202) 267-4685
Email:dnoyes@comdt.uscg.mil

6010
20 October 2005

# MEMORANDUM

From:   D. R. Noyes, CAPT
       CG HIPAA Privacy Officer
       CG-1122

Reply to   CG-1122
Attn of:   CAPT Obrams
          202-267-0846

To:   CDR Willie Cacho

Subj:   INVESTIGATION INTO THE HEALTH INFORMATION PRIVACY COMPLAINT
       AGAINST USCG FILED WITH TMA DATED 08 FEB 2005

Ref:   (a) Health Information Portability and Accountability Act, Public Law 104-191
      (b) COMDTINST M5830.1, Administrative Investigations Manual

Preliminary Statement

1. Per references (a) and (b), a review was conducted, concluding 16 May 2005, concerning the circumstances leading to the Health Information Privacy Complaint that you filed with the TMA Privacy Office against the USCG dated 08 February 2005. Per COMDTINST M 5830.1, if an incident requires administrative investigation under more than one regulation, it is Coast Guard policy that a single investigation be utilized as long as all command and program requirements are met. Accordingly, the extensive investigation that the Commanding Officer, Air Station Miami, directed, was used to review the circumstances that led to the referenced Health Information Privacy Complaint. The completion of this review was delayed due to the necessity of legal input at multiple steps in the investigative process.

Findings of Fact

1. A comprehensive investigation was conducted from 21 July through 23 August 2004 at Air Station Miami concerning the circumstances surrounding the pharmacy quality assurance survey conducted by an employee during the week of 28 June 2004. Numerous witnesses were interviewed by the investigating officer. Actions taken by the XO, A/S Miami, included some disciplinary actions.
2. You stated on the Health Information Privacy Complaint Form and on interview that you were dissatisfied that the Coast Guard had taken no apparent action, and that therefore you elevated your HIPAA complaint to the TMA Privacy Office.

Opinions

1. An employee committed an intentional breach of patient confidentiality by accessing your entire health record inappropriately. While it is proper to communicate minimum necessary PHI to the Commanding Officer when it relates to fitness for duty, your PHI was additionally

CONFIDENTIAL

CONFIDENTIAL

Subj: INVESTIGATION INTO HEALTH INFORMATION    6010
PRIVACY COMPLAINT FILED WITH TMA 08 FEB 2005

20 October 2005

communicated inappropriately to others at the A/S Miami clinic, and then used to attempt to threaten you.

2. There appears to have been intentional, not accidental, unauthorized effort to access PHI and then use it to threaten you.

Actions

1. Appropriate additional disciplinary action has been taken against the employee who perpetrated the violation.

cc:              (1) TMA Privacy Office
                 (2) CG-112

**EXHIBIT 5**

**U.S. Department of**
**Homeland Security**

**United States**
**Coast Guard**

Commanding Officer
United States Coast Guard
Air Station Miami

14750 NW 44th CT
Opa-locka, FL 33054-2397
Staff Symbol: AVENG
Phone: (305) 953-2202
Fax: (305) 953-2251
Email:

5800
23 Aug 2004

# MEMORANDUM

From: ███████████████

Reply to
Attn of:

To: ███████████████
Thru:

Subj: INVESTIGATION INTO THE CIRCUMSTANCES SURROUNDING THE QUALITY
ASSURANCE CHECKS PERFORMED BY ████████████████████

Ref: (a) CG Administrative Investigation Manual, COMDTINST M5830.1
(b) Manual for Courts-Martial United States
(c) Military Justice Manual, COMDTINST M5810.1D

## Preliminary Statement

1. Per reference (a), (b) and (c), an investigation was conducted concerning the circumstances surrounding the Quality Assurance Checks of Air Station Miami's Health Records involving controlled substances during the week of 28 June 2004. All available evidence has been collected and documented.

2. The completion of this investigation was delayed due to a Focused Review of Air Station Miami's Clinic during the week of 2 August 2004 and preparation for Hurricane Charley.

## Finding of Facts

1. ████████████████████████████████████████████████

2. CDR Gordon is the Quality Assurance Coordinator for Air Station Miami's Health Services Department. As such, he assigns quarterly Monitoring and Evaluation (M&E) exercises on a random basis. While CDR Cacho was TAD to the CGC Eagle, ████████████████████

3. ████████████ ewed 27 cases while completing the M&E DUR-8 ███████████████ which met the criteria of the M&E DUR-8. One other unidentified record did not meet the criteria outlined in the M&E DUR-8 (Enclosure (6)).

4. The data collection methodology for the M&E DUR-8 requires the QA coordinator or pharmacy staff to review prescription forms CG5344, NAVMED 6710/11, and DD1289 for schedule II through V medications and ensure the patient has signed the back of the prescription

CONFIDENTIAL

Subj: INVESTIGATION INTO THE CIRCUMSTANCES          5800
SURROUNDING ████████████████████████████████████

23 Aug 2004

form. Then the QA coordinator or pharmacy staff will review the patient health record to ensure a corresponding prescription entry is made for all schedule II through V medications (Enclosure (4, 6, 10-13)).

5. After completing the M&E DUR-8, ████████████████████████████████████

████████████████████████████████████

(Enclosure (3, 9, 7, 24)).

7. The Pharmacy Quality Assurance Assist Visit conducted by ████████████████ identified several items in the Air Station Miami Pharmacy that needed improvements (Enclosure (23)).

8. ████████████████████████████████████

████████████████████████████████████

10. Public Health Service Officers assigned to the Coast Guard are subject to military law and have the military status equivalent of commissioned officers of the Coast Guard (Enclosure (19, 20)).

11 ████████████████████████████████████

12 ████████████████████████████████████

13. ████████████ tended the Coast Guard Direct Commissioned Officer Training at the Coast Guard Academy from 2 Aug 2004 to 3 Sep 2004 (Enclosure (21)).

Opinions

1. ████████ as deployed to the CGC Eagle ████████ ollowed normal procedures when he assigned the M&E DUR-8 to ████████ acts (1, 2)).

2. ████████████████████████████████████ When completing an M&E DUR-8, the QA coordinator or pharmacy staff should only check the SF600 and SF603 in a patient's health record for the schedule CII through CV medications. ████████████████████████████

████████████████████████████████████ )).

CONFIDENTIAL
2

CONFIDENTIAL

Subj: INVESTIGATION INTO THE CIRCUMSTANCES                   5800
SURROUNDING THE QUALITY ASSURANCE CHECKS
PERFORMED BY

23 Aug 2004



3.

4.

5.

<u>Recommendations</u>

1.

2.  I recommend

3.  I recommend that

4.  I recommend that

\#

Enclosure:    (1)  CDR Willie Cacho TAD orders to CGC Eagle dtd 20 Apr 04
              (2)  Summary of the interview between
              (3)  Summary of the interview between
              (4)  Summary of the interview between
              (5)  Summary of the interview between
              (6)  Monitoring and Evaluation report, Proper procedures for controlled
                   substance prescriptions exercise dtd 30 Jun 04
              (7)  E-mail between
              (8)  E-mail between
              (9)  Medications
              (10) E-mail between
              (11) E-mail between
              (12) E-mail between
              (13) E-mail between
              (14) E-mail between
              (15) E-mail between
              (16) Summary of the interview between
              (17) Statement from

CONFIDENTIAL

Subj: INVESTIGATION INTO THE CIRCUMSTANCES                    5800
SURROUNDING THE QUALITY ASSURANCE CHECKS
PERFORMED

23 Aug 2004

    (18) Summary of telephone interview between
    (19) Coast Guard Personnel Manual, COMDTINST M1000.6A, ch. 19 exhibit 1
    (20) E-mail between
    (21)

    (22) Article 31(B), and Miranda/Tempia Rights
    (23)
    (24) E-mail between
    (25) Investigation Officer Designation Letter
    (26) CG4910

CONFIDENTIAL

CONFIDENTIAL

Summary of Interview
with CDR Stanley Gordon

On 28 July 2004 CDR Alan Carver interviewed CDR Stanley Gordon, Senior Dental Officer,
Deputy Chief of Health Services Department and Quality Assurance Coordinator for Coast
Guard Air Station. The interview was conducted at 1100 in Air Station Miami Commanding
Officer's conference room.

CDR Carver started the interview by briefly explaining he was conducting a single individual
informal investigation into the circumstances surrounding the Quality Assurance (QA) Checks of
Air Station Miami's Health Records involving controlled substances during the week of 28 June
2004. Following that, CDR Carver asked CDR Gordon if he wanted to start with a statement of
what he knew about the QA check.

CDR Gordon stated that as the QA Coordinator he assigns Monitoring and Evaluation (M&E) on
a quarterly basis to each of the sections within Health Services Division. He assigns the QA
check randomly to each section and he had assigned Proper Procedures for Controlled Substance
Rxs (M&E DUR-8) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ After completing the M&E DUR-8, ▮



The data collection methodology for the M&E DUR-8 calls for a review of prescription forms
prior to reviewing patient health records. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ rought the original and one copy of the M&E DUR-8 dated 30 June 2004 that

This is an accurate summary of the oral statement

*Stanley K Gordon*                    [signature]

CONFIDENTIAL

**ENCLOSURE ( 2 )**

CONFIDENTIAL

Summary of Interview
with CDR Willie Cacho

On 30 July 2004 CDR Alan Carver interviewed CDR Wille Cacho, 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, Senior
Medical Officer, Chief of Health Services Department and Quality for Coast Guard Air
Station. The interview was conducted at 0900 in Air Station Miami Commanding
Officer's conference room.

CDR Carver started the interview by briefly explaining he was conducting a single
individual informal investigation into the circumstances surrounding the Quality
Assurance (QA) Checks of Air Station Miami's Health Records involving controlled
substances during the week of 28 June 2004.



While CDR Cacho was TAD to the CGC Eagle, CDR Stanley Gordon, Deputy Chief of
Health Services Department at Air Station Miami was acting Chief.



After receiving initial notification from CDR Gordon,

CDR Cacho also provided CDR Carver a copy of the M&E DUR-8 that
                                While reviewing it, CDR Cacho's SSN was found as case number eight
and that it had met the data collection methodology

CONFIDENTIAL

**ENCLOSURE ( 3 )**

CONFIDENTIAL



This is an accurate summary of the oral statement

CONFIDENTIAL

Summary of Interview
with LT Jerald R. Jarvi

On 4 August 2004 CDR Alan Carver interviewed ████████████████████████████

CDR Carver started the interview by briefly explaining he was conducting a single individual informal investigation into the circumstances surrounding the Quality Assurance (QA) Checks of Air Station Miami's Health Records involving controlled substances during the week of 28 June 2004.



This is an accurate summary of the oral statement

Accountability Act. If you have received this email in error, please advise the sender immediately and delete the entire message together with all attachments. All unintended recipients are hereby notified that any use, distribution, copying or any other action regarding this email is strictly prohibited.

-----Original Message-----
**From:** ▮▮▮▮▮▮▮▮
**Sent:** ▮▮▮ Tuesday, August 03, 2004 2:58 PM
**Subject:** ▮▮▮▮▮ on the M&8 DUR-8

I'm conducting a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In step (b) of the data collection methodology section, the QA Coordinator or pharmacy staff will review the patient health record to ensure that a corresponding prescription entry was made for all identified schedule II through V prescriptions. Could you help me with the following questions?

1. What items in the health records should be checked to ensure a corresponding prescription entry is made?
▮▮▮▮▮▮▮▮▮ The reviewer or data collector will take the controlled substance prescription and mirror it with a health record entry. He/she will look at the date the prescription was written, go to the health record and look for the corresponding date in the health record (SF600 section), then verify that health record entry for the prescription was made. No further review is required.

2. What items are normally checked during a M&E DUR-8? ▮▮▮▮▮▮▮▮▮ The only requirements is patient's health record entry of the same drug as written on the prescription (usually DD1289 or CG5344) and patient's signature on back of the prescription.

3. Have you had the opportunity to conduct a M&E DUR-8 in the past, and if so what items did you check? ▮▮▮▮▮▮▮▮ This particular M&E came out during my tenure at CG HQ clinic and I have conducted it at least twice. I looked at the prescription, verified in the patient's health record that the same drug was written on the same date, and verified patient signature. Looking in the health record does not require detailed review.....

4. Should the QA Coordinator or pharmacy staff check the health record for prescription that are NOT identified as schedule II through V while completing a M&E DUR-8? ▮▮▮▮▮ If conducting only this particular M&E, it does not require the reviewer to check for anything else other than per the criteria indicated in section 2 of DUR-8.

Thank you for your help in this matter.



Note: This is an internal document that is predecisional and deliberative in nature. **This document is not to be released or disclosed** until the originator has been consulted and a releasability determination has been made.

Recieved   3 AUG 04
*(signature)*

**Carver, Alan CDR**

**From:**
**Sent:** Tuesday, August 03, 2004 4:16 PM
**To:**
**Subject:** RE: Question on the M&8 DUR-8

for an official policy regarding HIPPA, I would refer you to ████████████She is our HIPPA expert here at the office. She is on global.

In my opinion, and only my opinion, not legal opinion, I would say that if an individual started looking for information in a patient's health record outside of the scope of his intended target (DUR - 8), and utilized that information in a "negative way", then it is violating the privacy of the patient. But that is my opinion. I see it still as patient-doctor confidentiality and something that should be regarded even by someone who can or has the capability to see things......



USCG HQ, G-WKH-2
2100 SECOND STREET, SW, Rm 5314
Washington, DC 20593
mfong@comdt.uscg.mil
    This communication and its attachments are confidential to the Coast Guard Health Care Program and to the intended recipient(s). Information contained in this communication may be subject to the provisions of the Privacy Act of 1974 and Health Insurance Portability and Accountability Act. If you have received this email in error, please advise the sender immediately and delete the entire message together with all attachments. All unintended recipients are hereby notified that any use, distribution, copying or any other action regarding this email is strictly prohibited.

-----Original Message-----
**From:**
**Sent:** Tuesday, August 03, 2004 4:04 PM
**To:**
**Subject:** RE: Question on the M&8 DUR-8

One follow up question. In your opinion, would it be violation of the Privacy Act of 1974 or HIPPA if the QA Coordinator or pharmacy staff conducting a M&E DUR-8 reviewed other sections in a patient health record?

-----Original Message-----
**From:**
**Sent:** Tuesday, August 03, 2004 3:43 PM
**To:**
**Subject:** RE: Question on the M&8 DUR-8

CDR,

Good hearing from you. My answers follow each of your questions below. If I can be of further service.....feel free.

USCG HQ, G-WKH-2
2100 SECOND STREET, SW, Rm 5314
Washington, DC 20593
mfong@comdt.uscg.mil
    This communication and its attachments are confidential to the Coast Guard Health Care Program and to the intended recipient(s). Information contained in this communication may be subject to the provisions of the Privacy Act of 1974 and Health Insurance Portability and

ENCLOSURE ( 10 )

**Carver, Alan CDR**

**From:**
**Sent:**              Wednesday, August 04, 2004 8:39 AM
**Subject:**          DUR - 8

Good Morning CDR,

Took the liberty this morning and asked our resident expert on HIPPA Policy, CAPT Gunta Obrams. Asked her what is policy regarding our ongoing discussion..

She indicates that HIPPA Policy is "THE MINIMUM AMOUNT POSSIBLE", meaning that one would review only that which is required and no more....... SO, to me there would be a breach of that policy if one were reviewing based on given criteria and looked at additional information.
Hope that helps...

HAVE A GREAT DAY.



USCG HQ, G-WKH-2
2100 SECOND STREET, SW, Rm 5314
Washington, DC 20593
mfong@comdt.uscg.mil

This communication and its attachments are confidential to the Coast Guard Health Care Program and to the intended recipient(s). Information contained in this communication may be subject to the provisions of the Privacy Act of 1974 and Health Insurance Portability and Accountability Act. If you have received this email in error, please advise the sender immediately and delete the entire message together with all attachments. All unintended recipients are hereby notified that any use, distribution, copying or any other action regarding this email is strictly prohibited.

Recevd  4AUG 04
Alan W Th

ENCLOSURE ( 12 )

**Carver, Alan CDR**

| | |
|---|---|
| **From:** | |
| **Sent:** | Friday, August 06, 2004 9:55 AM |
| **To:** | |
| **Subject:** | excerpt from previous conversation - Re: HIPAA |

Good Morning CDR,
the below is a reply to an earlier email ████████ responded to regading the very same situation. I think it still applies
and hopefully will steer you in the right direction. If you need more info or clarification, please let me know.

Have a Great Weekend,
r/ ·



2100 SECOND STREET, SW, Rm 5314
Washington, DC 20593
mfong@comdt.uscg.mil

This communication and its attachments are confidential to the Coast Guard Health Care Program and to the intended recipient(s). Information contained in this communication may be subject to the provisions of the Privacy Act of 1974 and Health Insurance Portability and Accountability Act. If you have received this email in error, please advise the sender immediately and delete the entire message together with all attachments. All unintended recipients are hereby notified that any use, distribution, copying or any other action regarding this email is strictly prohibited.

First, under HIPAA, you do not need a patient's authorization to use his protected health information for quality assessment
and improvement activities. That said, DHHS has stated that disclosure of a patient's entire medical record is NOT justified
for this purpose; the minimum necessary standard applies for QA activities. Therefore, reasonable steps must be taken to
limit the use of protected health information (PHI) to what is needed to accomplish the intended purpose. In this instance, it
appears that the minimum necessary standard would limit the appropriate use of PHI to data regarding controlled
substances. In searching through a medical record for this QA information, incidental disclosures of PHI may occur (and
are allowable), but the incidental PHI is not part of the QA activity.

The incident described below should be treated/logged as a HIPAA disclosure. In addition, the P/SO should counsel the
staff member that the minimum necessary standard must be applied to QA reviews under HIPAA. While this is a HIPAA
violation, the Privacy Rule does not prohibit the release of entire medical records for QA purposes so that the HIPAA
violation is not an egregious one, especially since under UCMJ a member that finds another member to be in violation of
policy (i.e. flight status requirements) is expected to properly bring this information to command attention.

On the other hand, under employment policies and UCMJ, the use of personal information about a supervisor to attempt to
influence the OER evaluation process is totally inappropriate and unallowable from many perspectives, and certainly must
be addressed directly, through those channels.

I will stand by in case additional privacy/HIPAA questions arise as you get more information.



This communication and its attachments are confidential to the Coast Guard Health Care Program and to the intended recipient(s). Information contained in this communication may be subject to the provisions of the Privacy Act of 1974 and Health Insurance Portability and Accountability Act. If you have received this email in error, please advise the sender immediately and delete the entire message together with all attachments. All unintended recipients are hereby notified that any use, distribution, copying or any other action regarding this email is strictly prohibited.

Recieved  6AUG 04
Alan Wh

ENCLOSURE ( 13 )