**EXHIBIT 6**

CONFIDENTIAL

| DEPARTMENT OF HOMELAND SECURITY U.S. COAST GUARD CG-4910 (Rev. 3-03) | REPORT OF OFFENSE AND DISPOSITION | |
|---|---|---|
| TO<br>CAPT Keith A Taylor, Commanding Officer CG Air Station Miami | | DATE OF REPORT<br>08/23/04 |

I hereby report the following named person for the offense(s) noted:

| NAME OF ACCUSER | RATE/GRADE | DIV./DEPT. |
|---|---|---|
| [redacted] | CDR/USPHS | Medical |

| PLACE OF OFFENSE(S) | DATE OF OFFENSE(S) |
|---|---|
| Coast Guard Air Station Miami | 06/18/04 |

DETAILS OF OFFENSE(S) (Recite article UCMJ, if known. Not necessary to use form specification in Part 4, MCM. Generally describe actions of accused which are believed to constitute offense(s) under the UCMJ.)

[redacted]

| NAME OF WITNESS | RATE/GRADE | DIV/DEPT. | NAME OF WITNESS | RATE/GRADE | DIV/DEPT. |
|---|---|---|---|---|---|
| [redacted] | CDR | Med | [redacted] | CDR | Med |
| [redacted] | HS2 | Med | [redacted] | CDR | MLCLANT |

RATE/GRADE/TITLE OF PERSON SUBMITTING REPORT        SIGNATURE OF PERSON SUBMITTING REPORT

### INITIAL ACTION OF EXECUTIVE OFFICER

(When allegations apparently involve minor offenses normally handled by NJP or SCM, the accused should be advised of the allegation(s) and offered the opportunity to select a representative. If a statement is to be requested, advise accused of rights from Form CG-5168A or "End. (5)", MJM (COMDTINST M5810.1 Series). Thereafter the matter should be referred, with the next section of information provided, to a preliminary inquiry officer for investigation.)

I have been informed of the Offense(s) which I am suspected of having committed, that the command is considering the imposition of nonjudicial punishment and has assigned a preliminary inquiry officer, and

[ ] I DESIRE THAT _____ BE APPOINTED AS MY REPRESENTATIVE IN THIS CASE.

[ ] I DO NOT DESIRE THE APPOINTMENT OF A REPRESENTATIVE.

_____ (Signature of accused)

_____ IS APPOINTED THE ACCUSED'S REPRESENTATIVE.

_____ IS DESIGNATED THE PRELIMINARY INQUIRY OFFICER.

_____ (Signature of Executive Officer)

### INFORMATION CONCERNING ACCUSED

| CURRENT ENL. DATE | EXP. CURRENT ENL. DATE | TOTAL ACTIVE SERVICE | TOTAL SERVICE ON BOARD | EDUCATION | GCT | AGE | MARITAL STATUS | NO. OF DEPENDENTS | PAY PER MO. (including sea or foreign duty pay) |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

RECORD OF PREVIOUS OFFENSE(S) (Date, type, action taken, etc., Nonjudicial punishment incidents are to be included.)

PREVIOUS EDITION IS OBSOLETE

CONFIDENTIAL

# PRELIMINARY INQUIRY OFFICER'S REPORT

I have advised ████████████ of the information upon which the allegations are based and offered him/her the opportunity to examine the available statements and evidence.

**COMMENT.** (Address witness availability and conflicts of evidence. Summarize available evidence to support each element of the offense alleged. Including location of real and documentary evidence. Attach statements, or summaries of statements of witnesses. Summarize reasons for ultimate recommendation.)

SEE ATTACHED INVESTIGATION

**RECOMMENDATION AS TO DISPOSITION:**

- [x] DISPOSE OF CASE AT MAST
- [ ] REFER TO COURT MARTIAL FOR TRIAL OF ATTACHED CHARGES (Complete Charge Sheet DD Form 458, page 1.)
- [ ] NO PUNITIVE ACTION NECESSARY OR DESIRABLE
- [ ] OTHER (Specify) _____

**SIGNATURE OF INVESTIGATING OFFICER:** ████████

## ACTION OF EXECUTIVE OFFICER

- [x] DISMISSED ( COUNSELING SESSION W/ CO, KNOW TOWL, LTR OF CENSURE, DOCUMENTED IN PMK CDRS )
- [ ] RECOMMEND CAPTAIN'S MAST
  - [ ] INFORMED ACCUSED OF RIGHTS TO REFUSE NJP AND CONFER WITH COUNSEL (If accused not attached to or embarked in a vessel.)
  - [ ] ACKNOWLEDGEMENT OF RIGHTS/ACCEPTANCE OF NJP FORM ATTACHED
- [ ] RECOMMEND TRIAL BY _____ COURT-MARTIAL

(Signature of Executive Officer) ████████

## ACTION OF COMMANDING OFFICER

- [ ] DISMISSED
- [x] DISMISSED WITH WARNING (Not considered NJP)
- [ ] ADMONITION: ORAL/IN WRITING
- [ ] REPRIMAND: ORAL/IN WRITING
- [ ] REST TO _____ FOR _____ DAYS
- [ ] FORFEITURE: TO FORFEIT $ _____ PAY PER MO. FOR _____ MO(S).
- [ ] CORRECTIONAL CUSTODY FOR _____ DAYS
- [ ] REDUCTION TO PAY GRADE _____
- [ ] EXTRA DUTIES _____ DAYS
- [ ] PUNISHMENT SUSPENDED FOR _____ MOS.
- [ ] ART. 32 INVESTIGATION
- [ ] REFER TO SPCM
- [ ] REFER TO SCM

**DATE OF MAST:** _____  
**DATE ACCUSED INFORMED OF ABOVE ACTION AND NJP APPEAL RIGHTS:** ████  
**SIGNATURE OF COMMANDING OFFICER:** ████

## FINAL ADMINISTRATIVE ACTION

**APPEAL SUBMITTED BY ACCUSED**

DATE: _____  
FORWARDED FOR DECISION ON _____

**FINAL RESULT OF APPEAL:**

**APPROPRIATE ENTRIES MADE IN SERVICE RECORD** (Date & Initials)  
**FILED IN UNIT PUNISHMENT BOOK** (Date & Initials)

| DEPARTMENT OF HOMELAND SECURITY U.S. COAST GUARD CG-4910 (Rev. 3-03) | REPORT OF OFFENSE AND DISPOSITION | | |
|---|---|---|---|
| TO ███████████████████████ | | | DATE OF REPORT 08/23/04 |

I hereby report the following named person for the offense(s) noted:

| NAME OF ACCUSED ███████ | RATE/GRADE CDR/USPHS | DIV./DEPT. Medical |
|---|---|---|
| PLACE OF OFFENSE(S) ███████ | DATE OF OFFENSE(S) 06/30/04 | |

**DETAILS OF OFFENSE(S)** *(Recite article UCMJ, if known. Not necessary to use form specification in Part 4, MCM. Generally describe actions of accused which are believed to constitute offense(s) under the UCMJ.)*

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

| NAME OF WITNESS | RATE/GRADE | DIV./DEPT. | NAME OF WITNESS | RATE/GRADE | DIV./DEPT. |
|---|---|---|---|---|---|
| ███████ | CDR | Med | ███████ | CDR | MLCLANT |
| ███████ | CDR | Med | ███████ | HS2 | Med |

RATE ██████ PERSON SUBMITTING REPORT    SIG ████████ ON SUBMITTING REPORT

### INITIAL ACTION OF EXECUTIVE OFFICER

*(When allegations apparently involve minor offenses normally handled by NJP or SCM, the accused should be advised of the allegation(s) and offered the opportunity to select a representative. If a statement is to be requested, advise accused of rights from Form CG-5168A or "Encl. (5)", MJM (COMDTINST M5810.1 Series). Thereafter the matter should be referred, with the next section of information provided, to a preliminary inquiry officer for investigation.)*

I have been informed of the Offense(s) which I am suspected of having committed, that the command is considering the imposition of nonjudicial punishment and has assigned a preliminary inquiry officer, and

☐ I DESIRE THAT _____ BE APPOINTED AS MY REPRESENTATIVE IN THIS CASE.

☐ I DO NOT DESIRE THE APPOINTMENT OF A REPRESENTATIVE.

_____
*(Signature of accused)*

_____ IS APPOINTED THE ACCUSED'S REPRESENTATIVE.

_____ IS DESIGNATED THE PRELIMINARY INQUIRY OFFICER.

_____
*(Signature of Executive Officer)*

### INFORMATION CONCERNING ACCUSED

| CURRENT ENL. DATE | EXP. CURRENT ENL. DATE | TOTAL ACTIVE SERVICE | TOTAL SERVICE ON BOARD | EDUCATION | GCT | AGE | MARITAL STATUS | NO. OF DEPENDENTS | PAY PER MO. *(including sea or foreign duty pay)* |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

**RECORD OF PREVIOUS OFFENSE(S)** *(Date, type, action taken, etc., Nonjudicial punishment incidents are to be included.)*

PREVIOUS EDITION IS OBSOLETE

## PRELIMINARY INQUIRY OFFICER'S REPORT

I have advised _____ of the information upon which the allegations are based and offered him/her the opportunity to examine the available statements and evidence.

COMMENT. (Address witness availability and conflicts of evidence. Summarize available evidence to support each element of the offense alleged. Including location of real and documentary evidence. Attach statements, or summaries of statements of witnesses. Summarize reasons for ultimate recommendation.)

SEE ATTACHED INVESTIGATION.

RECOMMENDATION AS TO DISPOSITION:

- [x] DISPOSE OF CASE AT MAST
- [ ] REFER TO COURT MARTIAL FOR TRIAL OF ATTACHED CHARGES (Complete Charge Sheet DD Form 458, page 1.)
- [ ] NO PUNITIVE ACTION NECESSARY OR DESIRABLE
- [ ] OTHER (Specify) _____

SIGNATURE OF INVESTIGATING OFFICER: _____

### ACTION OF EXECUTIVE OFFICER

- [x] DISMISSED (Counseling session w/ CO, MIAAS TRNG, LTR OF CENSURE, documented in mbr's [illegible])
- [ ] RECOMMEND CAPTAIN'S MAST
  - [ ] INFORMED ACCUSED OF RIGHTS TO REFUSE NJP AND CONFER WITH COUNSEL (If accused not attached to or embarked in a vessel.)
  - [ ] ACKNOWLEDGEMENT OF RIGHTS/ACCEPTANCE OF NJP FORM ATTACHED
- [ ] RECOMMEND TRIAL BY _____ COURT-MARTIAL

(Signature of Executive Officer)

### ACTION OF COMMANDING OFFICER

- [ ] DISMISSED
- [x] DISMISSED WITH WARNING (Not considered NJP)
- [ ] ADMONITION: ORAL/IN WRITING
- [ ] REPRIMAND: ORAL/IN WRITING
- [ ] REST TO _____ FOR _____ DAYS
- [ ] FORFEITURE: TO FORFEIT $ _____ PAY PER MO. FOR _____ MO(S).
- [ ] CORRECTIONAL CUSTODY FOR _____ DAYS
- [ ] REDUCTION TO PAY GRADE _____
- [ ] EXTRA DUTIES _____ DAYS
- [ ] PUNISHMENT SUSPENDED FOR _____ MOS.
- [ ] ART. 32 INVESTIGATION
- [ ] REFER TO SPCM
- [ ] REFER TO SCM

DATE OF MAST | DATE ACCUSED INFORMED OF ABOVE ACTION AND NJP APPEAL RIGHTS | SIGNATURE OF COMMANDING OFFICER

### FINAL ADMINISTRATIVE ACTION

APPEAL SUBMITTED BY ACCUSED | FINAL RESULT OF APPEAL:

DATE: _____

FORWARDED FOR DECISION ON _____

APPROPRIATE ENTRIES MADE IN SERVICE RECORD (Date & Initials) | FILED IN UNIT PUNISHMENT BOOK (Date & Initials)

**EXHIBIT 7**

CDR Alan Carver

-----Original Message-----
From: ███
Sent: ███ 3:51 PM
To: ███
Subject: phone con 8/03/04

Hello,

As requested in our phone conversation today, I am sending an email with the information that we discussed.

I learned that your command was investigating ███



very respectfully,

**Carver, Alan CDR**

**From:** █████████
**Sent:** ~~Friday, August 06, 2004~~ 3:18 PM
**To:** █████████
**Subject:** RE: phone con 8/03/04

Hello,

1. Is there any way you could narrow down the dat█████████
████████████████████████████████████████
████████████████████████████████████████

2. How did you first learn of the question about █████████
█████
████████████████████████████████████████

✉ RE: CH-19

████████████████
████████████████

-----Original Message-----
**From:** █████████
**Sent:** ~~Friday, August 06, 2004~~ 1:10 PM
**To:** █████████
**Subject:** RE: phone con 8/03/04

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

1

ENCLOSURE ( 14 )

# EXHIBIT 8

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIE CACHO, M.D., )
)
    *Plaintiff,* )
) Civil Action No. 06-0292 (ESH)
v. )
)
THE HONORABLE )
  MICHAEL CHERTOFF, )
)
    *Defendant.* )
)

## DECLARATION OF CDR WILLIE CACHO, M.D.

1.     I am Commander Willie Cacho, M.D., a board certified physician and commissioned officer in the United States Commissioned Officers Corps, United States Public Health Service.

2.     I presently serve as Medical Branch Chief, Coast Guard Training Center, Cape May, NJ.

3.     During the first quarter of 2004, I counseled CDR Alan Sokolowski, Chief Pharmacist, Coast guard Air Station, Miami, Fl, regarding deficiencies in his performance of duties as pharmacist.

4.     Because of his continued deficient performance, I called a formal counseling session on June 18, 2004 with CDR Sokolowski, at which Captain Keith Taylor, then-Commanding Officer, Coast Guard Air Station Miami, and Captain Michael Andres, then-Executive Officer, Coast Guard Air Station Miami, were present.

5.     On June 18, 2004, before the counseling session began, CDR Sokolowski said to me, "If you f*** me, I'll f*** you," or words to the same effect.

6.     During the period of June 19, 2004 to July 12, 2004, I was deployed on temporary duty assignment to the Coast Guard Cutter Eagle.

7.     While I was assigned to the Coast Guard Cutter Eagle, CDR Stanley Gordon and LT Jerald Jarvi contacted me by e-mail and informed me that CDR Sokolowski had accessed my entire medical record and disclosed my personal health information to them.

8.     Commander Gordon informed me that he believed CDR Sokolowski was going to use my personal health information against me if he was not satisfied with the Commissioned Officer Effectiveness Report I was going to prepare for him.

9.    I was extremely distressed to learn that CDR Sokolowski had accessed my entire medical record and was threatening to use my personal health information against me. I became very angry and anxious.

10.    I remained in a distressed mental state throughout my temporary duty assignment aboard the Coast Guard Cutter Eagle. I was shocked that CDR Sokolowski had access to and probably knew of every medical condition including sensitive personal diagnoses and symptoms I had been treated for during the course of my career. I felt that my most valuable rights to privacy and physician-patient confidentiality had been intruded on by someone who had no right or need to know of the information contained in my medical record. As a physician I am extremely aware of the sensitivity of patient health information and the legal and ethical requirements to protect that information from unjustified and unnecessary intrusion.

11.    My mental distress worsened after my return to Coast Guard Air Station Miami and the command began a series of investigations and adverse personnel actions against me.

12.    I declare under penalty of perjury that the foregoing is true and correct. Executed on this 29th day of August, 2006.

                                                      *[signature]*
                                                      CDR Willie Cacho

*Clinical & Forensic Consulting, P.L.C.*

Anita L. Boss, Psy.D., ABPP  
Board Certified in Forensic Psychology

300 S. Washington St., Suite 300  
Alexandria, VA 22314  
703.299.2422

## Psychological Evaluation

Re: CACHO, Willie  
Date of Birth: 4 Apr 1957  
Age: 49  
Date of Evaluation: 1 May 2006  
Date of Report: 26 July 2006

Dr. Willie Cacho, a 49-year-old Puerto Rican man, was referred for an independent psychological evaluation by his attorneys, Raymond J. Toney, Esq. and David P. Sheldon, Esq. The purpose of this examination was to determine whether or not Dr. Cacho had sustained psychological damage as a result of an unauthorized release of personal health information (PHI).

Prior to beginning this examination, Dr. Cacho was informed of the nature of this examination and the limits of confidentiality. Specifically, he was notified that the examination would consist of a clinical interview and psychological testing, and that I was retained as an independent examiner, approaching this evaluation with no particular result in mind. He was informed that the examination results would be provided to his attorneys and would potentially be released to opposing counsel and the Court. He signed a consent form indicating his understanding of this information and willingness to participate.

The opinions contained in this report are based on the listed sources of information. Should additional information become available, it may or may not affect the conclusions offered in this report.

Summary of Sources of Information:

The individual documents reviewed for this examination are attached in an appendix to this report. Below is a summary of some of the relevant information reviewed for this examination.

1. Clinical interview and psychological testing session with Dr. Cacho at my office in Alexandria, VA; 1 May 2006. Tests administered included the Personality Assessment Inventory (PAI), Minnesota Multiphasic

Personality Inventory-2nd Edition (MMPI-2), and Hopkins Symptom Checklist-90-R.
2. Telephone interview with Capt. Carlos Quinones; 7 Jun 2006.
3. Telephone interview with Diana Cacho; plaintiff's wife; 8 Jun 2006.
4. Telephone interview with Lt. Jerald Jarvi; 8 Jun 2006.
5. Telephone interview with Dr. Cacho's sister, Mayra Cacho; 20 July 2006.
6. Complaint; filed 17 Feb 2006.
7. Findings and supporting documents from the Department of Homeland Security's (DHS) "INVESTIGATION INTO THE HEALTH INFORMATION PRIVACY COMPLAINT AGAINST USCG FILED WITH TMA DATED 08 FEB 2005."
8. Letter from Law Offices of David P. Sheldon, P.L.L.C. to Department of Health and Human Services; Subject: COER Rebuttal of CDR Willie Cacho; 10 Jan 2005.
9. Dr. Cacho's Performance Reports from 1988 to 2006.
10. Four Promotion Recommendations (undated).
11. Reviewing Official's Statement, 2006 Promotion Board Review; 20 Jan 2006.
12. Letter of Recommendation for Dr. Cacho from Capt. Curtis B. Odom; 18 Jan 2006.
13. Letter of Appreciation for Dr. Cacho from Capt. Odom; 3 Feb 2006.
14. DHS, Unites States Coast Guard (USCG) Report of Investigation; 16 Sep 2005; with the Exhibits and Documents that were forwarded to plaintiff's counsel.
15. Multiple recommendations in support of Dr. Cacho's application for medical privileges; Oct.-Nov. 2004.
16. Designation as Flight Surgeon; 22 Jul 2003.
17. Revocation of Designation as Flight Surgeon; 29 Oct 2004.
18. Revocation of Flight Surgeon Designation Appeal; 28 Feb 2005.
19. Complaint forms and documentation related to Dr. Cacho's EEO and HIPPA claims.
20. E-mail from Dr. Cacho to RADM Paul Higgins; 2 Mar 2005.
21. Administrative Letter of Censure; 27 Sep 2004.
22. Memo: Privileging Action; 23 Jul 2004.
23. Memo: Temporary Suspension of Chief; 24 Sep 2004.
24. Memo: Unsatisfactory Aeronautical Adaptability Determination; undated.
25. Memo: Aviation Medicine Privileges for CDR Willie Cacho; 1 Oct 2004.
26. Dr. Cacho's USCG medical records.
27. Medical records and summaries from Dr. Cacho's evaluation and treatment with Arnold P. Carter, M.D.; October 2004.
28. Results of an SCL-90, Beck Depression and Hopelessness Inventories, and Millon Clinical Multiaxial Inventory-3rd Edition (MCMI-III) administered at Dr. Carter's office; October 20, 2004.

5. *There is independent corroboration that Dr. Cacho complained of symptoms prior to the initiation of a claim of psychological damage.* There is clear documentation that Dr. Cacho sought assistance from a psychiatrist after the disclosure was made and prior to his transfer to Cape May. He was thoroughly evaluated and diagnosed as suffering from a Major Depressive Episode prior to seeking relief through the present Complaint. He not only complained of symptoms to his psychiatrist, but his intense distress, tearfulness, and difficulty controlling his emotions were observed by his peers at work as well as his family.

Conclusions: The available information and clinical evaluation indicate that Dr. Cacho's report of suffering significant psychological symptoms is not only consistent with multiple collateral sources, but also congruent with the initial event that transpired immediately before their onset, as well as the aftermath of that event. The disclosure of Dr. Cacho's personal health information, followed by the multiple investigations and expression of "lack of confidence" from his superiors precipitated significant psychological distress, as well as ongoing psychological symptoms.

Even though the revocation of aviation medicine privileges was presented to Dr. Cacho as non-punitive, most physicians would still perceive this as a public and official sanction. The public loss of these privileges, his aviation practice, and the loss of confidence shown by his patients and superiors was particularly humiliating and emotionally devastating for him. This was compounded by the knowledge that others with no legitimate need to know had been told of his private medical information. As a result of the disclosure, his personal medical information became widely discussed in investigations, and he experienced significant psychological distress from the public humiliation, revocation of privileges, and transfer.

Dr. Cacho's psychological health, self-esteem, confidence, family relationships, and professional reputation have been compromised. His current presentation meets the criteria for Major Depressive Episode, Severe without psychotic features. His current symptoms include feelings of depression and anxiety, early morning awakening, excessive worry, low energy level, low sexual interest, and lack of interest in activities. He reported chronic fatigue and excessive sleepiness. Finally, he remains irritable and quick to anger with his family, which has caused a great deal of stress for Dr. Cacho, his wife, and their daughters.

Initially, in 2004, Dr. Cacho's ability to function normally at work was compromised by his high level of distress and depression, outbursts of crying, and irritability. This has apparently resolved after a period of about one year, during which time, he sought psychiatric intervention, counseling, and steady

support from a friend who invited him to live with him. While he can perform his duties without disruption, and he has maintained his exemplary work performance, he continues to worry about his reputation at work and feels he has not "healed" from the statement that his superiors lacked confidence in him. He continues to feel humiliated that he is not allowed to work in his chosen field of flight medicine. His depression, anxiety, and irritability have taken a tremendous toll on his ability to enjoy his previously stable career and happy marriage, sexuality, and to generally take pleasure in life and family.

If there are any questions regarding the information in this report or its conclusions, please do not hesitate to contact the undersigned at the telephone number listed above.

Anita L. Boss, Psy.D., ABPP
Board Certified in Forensic Psychology
Licensed Clinical Psychologist