UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILLIE CACHO, M.D., <br> Commander, U.S. Public Health Service | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | C.A. No. 1:06CV00292 (ESH) |
| v. | ) <br> ) | |
| THE HONORABLE MICHAEL CHERTOFF <br> Secretary, Department of Homeland Security | ) <br> ) <br> ) | |
| Defendant. | ) <br> ) <br> ) | |

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

Defendant hereby replies to plaintiff's opposition to defendant's motion to dismiss or, alternatively, for summary judgment ("Def. Mot.") in this Privacy Act case.

In this case, Commander Cacho claims that he has been injured by a Privacy Act violation committed by the Coast Guard. However, he has failed to carry his burden of establishing a *prima facie* case under the Privacy Act by showing that: "(1) the disclosed information is a 'record' contained in a 'system of records'; (2) the agency improperly disclosed the information; (3) the disclosure was willful or intentional; and (4) the disclosure adversely affected the plaintiff." See Def. Mot. at 12 (citations omitted). Although defendant assumed for the purpose of his motion that plaintiff could establish the first element of the Privacy Act standard (id.), after reviewing plaintiff's opposition, defendant now asserts that plaintiff is also unable to establish that the disclosed information is a "record" contained in a system of records.

1. Plaintiff Complains About an Alleged Unauthorized Disclosure of
   <u>an Omission of Information in a System of Records, not a Record.</u>

The Privacy Act does not create a cause of action for disclosure of the absence of information from a Privacy Act system of records.

The plain language of the Privacy Act prohibits improper disclosure of information from a Privacy Act system of records. The law states that: "No agency shall disclose <u>any</u> <u>record</u> which is contained in a system of records . . . ." 5 U.S.C. § 55a(b)(emphasis added). The Privacy Act does not address the disclosure of the absence of information from a Privacy Act system of records.

In this case, what Commander Sokolowski disclosed to Commander Gordon and Lieutenant Jarvi was the absence of information from Commander Cacho's medical record. By the clear language of the statute, such a disclosure cannot be the basis for a Privacy Act cause of action.

The parties agree that Commander Sokolowski accessed Commander Cacho's medical record during a Quality Assurance review at about the end of June 2004, and that Commander Sokolowski disclosed to Commander Gordon and Lieutenant Jarvi that medications that Commander Cacho was taking and a medical condition he suffered from were not listed on the forms from Commander Cacho's most recent flight physical. This absence of information raised both quality assurance issues and issues about Commander Cacho's qualification for flight status and his failure to timely report his medications and medical condition.

As the Coast Guard explained in its opening brief, under the Privacy Act, it is plaintiff's burden to prove the elements of his Privacy Act claim. Def. Mot. at p. 12

(citations omitted).  Commander Cacho has not addressed how the absence of a record in a system of records could be defined as a "record" for the purposes of the Privacy Act. Accordingly, he has failed to set forth the first element of his Privacy Act claim.

   2. <u>Plaintiff Has Failed to Establish that there Was an Improper Disclosure.</u>

Defendant established in Part I of Def. Mot. that Commander Sokolowski was authorized to access plaintiff's medical file.  In response, Commander Cacho devotes a significant portion of his opposition brief (Part IV., Subpart 1., from pages 14 to 20) to what he asserts is evidence that Commander Sokolowski did not have authority to access his medical record, and that Commander Sokolowski had an evil motive for disclosing information to Commander Gordon, Lieutenant Jarvi, and Commander Marshall.  While these assertions might have some value in an enforcement proceeding under the Health Insurance Portability and Accountability Act ("HIPAA"), they have no probative value with respect to the second element of Commander Cacho's Privacy Act claim, <u>i.e.</u>, that the disclosure, to the extent that there was one, was improper.  There is nothing inconsistent with the Coast Guard's finding that there was a HIPAA violation, at the same time it asserts that Commander Cacho does not state a Privacy Act claim upon which relief can be granted.[1]

Based on the plain language of 5 U.S.C. § 552a(b)(1), the discloser, and the discloser's authority to access Commander Cacho's medical record or his motive for making disclosures, have no bearing on whether the disclosure was improper.  Instead,

---

[1] Commander Cacho's opposition brief might be compelling if his cause of action was based on a violation of the HIPAA.  But HIPAA does not provide for a private cause of action and this case is based on a claim of improper Privacy Act disclosures.

the focus must be on the agency officials to whom the disclosures were made, and whether those officials had "a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1).[2]

In order to establish the second element of his Privacy Act claim, Commander Cacho must show that a disclosure was made to someone other than an agency official with a need to know the information. The Coast Guard demonstrated that Commander Gordon and Lieutenant Jarvi were agency officials with a need to know the information disclosed to them by Commander Sokolowski. See Def. Mot. at pp. 13-15. In Part IV., subpart 2., pages 20 to 28, of plaintiff's opposition, Commander Cacho addresses the issue of whether the alleged disclosures were to agency officials with a need to know. However, he fails to remedy the lack of facts showing that the disclosures were improper under the Privacy Act.

---

[2] In accordance with 5 U.S.C. § 552a(b)(1), an agency disclosure is not improper if the disclosure is made to an agency official with a need to know. However, plaintiff continues to argue that Commander Sokolowski was not authorized to access plaintiff's records. Opposition at pp. 15 & 17. Plaintiff incorrectly asserts that the Medical Manual, Article 10.A.4.a, providing that pharmacy staff have access to medical records to provide complete pharmaceutical care does not authorize Commander Sokolowski, as a pharmacist, to access Commander Cacho's medical record because he is not a "health care provider" under Article 13.C.3.1. Opposition at p 17. Section 13.C. deals with clinical privileges, and the definition of "provider" cited by Commander Cacho begins with the qualifier "[f]or this chapter." Because pharmacists are not required to have clinical privileges, there is no reason to address pharmacists in Chapter 13. That does not mean that pharmacists cannot be health care providers for purposes of Article 4.A.1.a.(6). But even if it they are not, that provision also includes "quality assurance and medical records personnel." The undisputed facts in this case show that Commander Sokolowski had quality assurance duties, and Article 10.A.4.a. suggests that pharmacists are medical records personnel. Even if Article 4.A.1.a.(6) fails as authority to access medical records, Article 10.A.4.a. clearly does affirmatively authorize pharmacists, such as Commander Sokolowski to access medical records.

      a.  <u>The Alleged Improper Disclosure to Commander Gordon and Lieutenant Jarvi</u>.

With respect to Commander Gordon, Commander Cacho argues that Commander Gordon had no need to know the information disclosed by Commander Sokolowski either as a dental officer or for quality assurance review purposes.  This ignores the fact that Commander Gordon states in his declaration that at the time of the disclosure he was the Acting Chief of the Health Services Division because of Commander Cacho's absence.  <u>See</u> Def. Mot. at Attachment G.

As the Coast Guard demonstrated in defendant's dispositive motion, legitimate quality assurance issues were raised by the failure to record a significant medical condition and medications in Commander Cacho's medical record. Def. Mot. at pp. 13-14.   In the summary interview of Commander Gordon attached to plaintiff's opposition brief, which came from Commander Carver's investigation, Commander Carver relates: "CDR Gordon stated that at the time he realized the importance of the medication not being documented in CDR Cacho's health record and he needed to address this issue." Commander Gordon obviously recognized that he had an official duty to "address this issue" and he had a need to know about the failure to document the medication and medical condition in order to do that.

Additionally, as Chief of the Health Services Division at Air Station Miami in Commander Cacho's absence, Commander Gordon had a need to know of the failure to document the medication and medical condition in order to ensure that the Commanding Officer was advised of information that could affect Commander Cacho's qualification for flight status.  <u>See</u> Def. Mot. at Attachment G, ¶¶ 4-5.

      b.  <u>The Alleged Improper Disclosure to Commander Marshall</u>

Based on information defendant voluntarily provided to Commander Cacho after the status conference in this case, plaintiff argues that Commander Sokolowski made a disclosure to Commander Marshall.  However, the information relied on, a communications between Commander Sokolowski and Commander Marshall, does not reflect facts that establish that a Privacy Act disclosure of Commander Cacho's records occurred.  The evidence, a communication from Commander Sokolowski to Commander Marshall several months before the incidents at issue in this law suit, does not establish that the information came from Commander Cacho's medical file.  It is clear from Commander Sokolowski's declaration, that he dispensed and counseled Commander Cacho on medications for his medical condition for months before the events of late June 2004. Def. Mot. at Attachment A, ¶ 5.  Thus, while there is evidence that Commander Sokolowski had knowledge of Commander Cacho's medical condition--based on dispensing medication to Commander Cacho and counseling Commander Cacho about the medication--at the time he communicated information to Commander Marshall, there is no evidence that Commander Cacho obtained information from Commander Cacho's medical record prior to late June 2004.

Additionally, with respect to the communication to Commander Marshall, Commander Cacho does not suggest what actual damages he sustained.  There was no adverse action as a result of the communication to Commander Marshall, or action of any kind.  Moreover, Commander Cacho had no knowledge of the communication until the Coast Guard recently provided the documents after the Court's status conference.  Thus,

there is no basis for a finding that any communication to Commander Marshall caused any actual damage to Commander Cacho.

Because there was no Privacy Act disclosure to Commander Marshall, and even if there were, it did not result in actual damages, there is no reason to reach the question of whether Commander Marshall was an agency official with a need to know the information communicated to him.

In sum, Commander Cacho asserts that his position and the position of the Coast Guard are diametrically opposed because he maintains that there is evidence of improper disclosures to Commander Marshall and Commander Gordon, while the Coast Guard maintains that Commander Cacho has not offered any facts of such improper disclosures. Proof of an improper disclosure to Commander Gordon fails because Commander Gordon was an agency official with a need to know the information disclosed. Moreover, as the Coast Guard has demonstrated, proof of an improper disclosure to Commander Marshall fails at least because no information from a Privacy Act system of records was disclosed to Commander Marshall, and, in any case, Commander Cacho has suffered no actual damages because of communication of information from Commander Sokolowski to Commander Marshall. Whatever else Commander Cacho believes he can prove, if he cannot prove that there was an improper disclosure, his Privacy Act claim fails.

3. <u>Plaintiff's Fails to Remedy the Absence of Facts Showing Actual Damages.</u>

Commander Cacho has failed to establish that he has suffered actual damages that were caused by an improper Privacy Act disclosure by Commander Sokolowski, rather than his own disclosure.

In his opposition, Commander Cacho offered his declaration and the report of Dr. Boss as evidence of his mental distress. It is clear that Commander Cacho has suffered no actual damages, including his alleged evidence of mental distress, as a result of an improper Privacy Act disclosure. It is undisputed that all of the personnel actions taken by the Coast Guard were initiated because of Commander Cacho's own disclosure of his failure to report significant medications and a medication, which occurred within days of Commander Sokolowski's alleged improper disclosures at the end of June 2004. Commander Cacho also cannot show that his mental distress resulted from improper disclosures by Commander Sokolowski as opposed to his own disclosure of information to Health program officials at Coast Guard Headquarters (Commander Fong) and Maintenance and Logistics Command Atlantic (Commander Marshall). Because there is no attempt to differentiate between the mental distress Commander Cacho has suffered as a result of Commander Sokolowski's alleged improper disclosure to Commander Gordon, and distress he suffers as a result of personnel actions initiated by his own disclosures, no finder of fact could find with any degree of certainty that Commander Cacho has suffered any actual damage caused by Commander Sokolowski's disclosure.

Commander Cacho does not dispute that proof of actual damages is a necessary element of his Privacy Act cause of action. Although he attempts to distinguish Albright v. United States, 732 F.2d 181, 189 (D.C. Cir. 1984) and Mandel v. OPM, 244 F.Supp.2d 146 (E.D.N.Y. 2003), cited in defendant's opening brief, he does not dispute the Coast Guard's position that the Privacy Act is not meant to shield a government employee from agency personnel actions, as explained in Albright. Moreover, plaintiff cannot dispute that all active duty personnel are subject to transfer based on the needs of

their Armed Service, and there is no guarantee that an expected tour of duty will not be cut short by orders to another location. Although Commander Cacho may have been distressed by his transfer from Miami to Cape May, the transfer itself is nothing more than any active duty service member may suffer as an incident of military service. Distress caused by the personnel actions taken against Commander Cacho is not a proper basis for actual damages in this case, both because those actions resulted from Commander Cacho's own failure to make a timely report of his medications and medical condition, and because those actions were initiated based on Commander Cacho's belated disclosures rather an improper Privacy Act disclosure.[3]

It is noteworthy that in his declaration, Commander Cacho does not state that he suffered distress because Commander Sokolowski improperly disclosed information to Commander Gordon. And in Dr. Boss's report, she makes no attempt to differentiate between mental distress caused by personnel actions and any mental distress caused by Commander Sokolowski's disclosure to Commander Gordon. In fact, Dr. Boss recites that Commander Soklowski disclosed information to Captain Taylor and Commander Andres. The Coast Guard has previously demonstrated that if such disclosures were made, they were only made after Captain Taylor and Commander Andres had learned of the information through Commander Cacho's disclosure to Coast Guard Headquarters and the Maintenance and Logistics Command.

---

[3] Defendant submits that a Privacy Act action is not an appropriate venue to consider the propriety of the personnel actions taken by the Coast Guard against Commander Cacho or the mental distress they have caused Commander Cacho, if any.

As previously discussed, the alleged disclosure by Commander Sokolowski to Commander Marshall, months before June 2004, could not have resulted in mental distress to Commander Cacho, because that disclosure did not result in any action, whatsoever, and Commander Cacho never knew of the disclosure until the Coast Guard recently provided additional limited discovery in this action.

Commander Cacho states in his opposition that there was a significant period of time between Commander Sokolowski's disclosure and any Coast Guard personnel actions initiated based on his own disclosure. He also states that Dr. Boss found that he suffered mental distress immediately after Commander Sokolowski's disclosure. However, Commander Cacho's July 8, 2004, email to Commander Fong and Commander Marshall reflects more indignation than distress, and it was this email, sent within days of Commander Sokolowski's disclosures, that initiated the Coast Guard personnel actions.

In July 2004, Rear Admiral Higgins advised Commander Cacho that a Focused Review Team would review him, Complaint at ¶ 16, and on July 23, 2004, his medical privileges were temporarily suspended, Complaint at ¶ 15. According to Dr. Boss's report, Commander Cacho first sought treatment for his mental distress on October 18, 2004, when he went to Dr. Carter for an evaluation. He saw Dr. Carter again on October 20, 2004, and was prescribed medications, but apparently did not require additional treatment. Commander Cacho occasionally took one of the medications, until he completed his move to Cape May, NJ, about November 15, 2004, Complaint at ¶ 27. This evidence at most only tends to show that Commander Cacho suffered distress as a result of the cumulative affect of Coast Guard personnel actions initiated based on his own disclosures. The evidence is such that no trier of fact could rationally find that there is

some actual damage or mental distress that is based only on an allegedly improper disclosure by Commander Sokolowski, as opposed to the personnel actions taken by the Coast Guard.

## CONCLUSION

As set forth herein and in defendant's motion to dismiss or for summary judgment, because Commander Cacho has failed to offer evidence that could establish the essential elements of his Privacy Act cause of action, he fails to state a claim upon which relief can be granted, and fails to meet the jurisdictional predicate for the Privacy Act waiver of sovereign immunity. Accordingly, this case should be dismissed.

Respectfully submitted,

/s/
KENNETH L. WAINSTEIN , D.C. Bar # 451058
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

OF COUNSEL:

ROBERT BRUCE, Esq.
Attorney, Office of Claims and Litigation
U.S. Coast Guard

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing reply has been served by e-filing and the accompanying affidavits have been served by first class mail postage pre-paid to:

>David P. Sheldon
>The Law Offices of David P. Sheldon, P.L.L.C.
>512 8th St., SE
>Washington, DC 20003

this 20th day of September 2006

>_____/s/_____
>CLAIRE WHITAKER
>Assistant U.S. Attorney
>555 4th St., N.W.  Room E-4204
>Washington, DC 20530
>202-514-7137