THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIE CACHO, M.D., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Civil Action No. 06-0292 (ESH) |
| v. ) | |
| ) | |
| THE HONORABLE ) | |
| MICHAEL CHERTOFF, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

## PLAINTIFF'S SURREPLY

Plaintiff, CDR Willie Cacho, respectfully submits this surreply to Defendant's reply to Plainitiff's opposition to Defendant's motion to dismiss or for summary judgment. By order dated September 26, 2006, this Court granted CDR Cacho leave to file a surreply.

### I. ARGUMENT

### 1. CDR SOKOLOWSKI DISCLOSED INFORMATION FROM RECORDS MAINTAINED IN A "SYSTEM OF RECORDS"

In his reply memorandum, Defendant contends that the Privacy Act provides no cause of action "for the disclosure of the absence of information from a Privacy Act system of records." Def.'s Reply at 2. Defendant is referring to the lack of documentation in CDR Cacho's flight physical of a medical condition he had and medication he took for the condition. Defendant does not cite any authority for this erroneous argument.

The Privacy Act does not define the word "information." According to Merriam Webster's Collegiate Dictionary, Eleventh Edition, 2003, "information" is: "1 : the communication or reception of knowledge or intelligence. 2 a (1) : knowledge obtained from

investigation, study or instruction   (2) : INTELLIGENCE, NEWS  (3) : FACTS, DATA ….." Under this definition, CDR Sokolowski clearly disclosed "information" obtained from a record maintained within a Privacy Act "system of records."

As determined by the Coast Guard, CDR Sokolowski improperly accessed and reviewed CDR Cacho's entire medical record. In doing so he learned the fact that CDR Cacho had not listed a medical condition and a medication for that condition on his most recent flight physical. CDR Sokolowski thus gained knowledge about CDR Cacho's flight physical. With intent to harm CDR Cacho, he then conveyed to others his knowledge of that fact, which was obtained by reviewing data contained in CDR Cacho's medical record, specifically his flight physical.

CDR Sokolowski inarguably obtained information from CDR Cacho's medical record and communicated that information to others. It does not matter that the information concerned the non-reporting of specific data. It was "information" as commonly understood and as defined above. Defendant's argument therefore is erroneous.

### 2. CDR SOKOLOWSKI MADE UNAUTHORIZED DISCLOSURES OF CDR CACHO'S PRIVACY ACT INFORMATION

Defendant also advances the argument that CDR Sokolowski's disclosure to CDR Gordon was proper because CDR Gordon was serving as Acting Chief of the Health Services Division during CDR Cacho's absence. Defendant relies in part on CDR Gordon's statement to CDR Carver, the investigating officer, that he "realized the importance of the medication not being documented in CDR Cacho's health record and he needed to address this issue." Def.'s Reply at 5.  From this statement Defendant imputes a "need to know" to CDR Gordon.

A *prima facie* claim under the Privacy Act, however, does not turn on the question of whether CDR Gordon had a "need to know," but on whether CDR Sokolowski personally had a need to know the information for the performance of his duties. *See Bigelow v. DOD*, 217 F.3d

875 (D.C. Cir. 2000), *cert. denied*, 532 U.S. 971 (2001). The evidence demonstrates that he had no such need.

As CDR Cacho discussed in his opposition memorandum, in two investigations the Coast Guard found that CDR Sokolowski exceeded his authority in conducting the QA review of patient records by accessing information from CDR Cacho's file that was outside the scope of the review. This evidence is more than sufficient to defeat a motion to dismiss or for summary judgment.

The Coast Guard's own HIPAA investigation determined that CDR Sokolowski "committed an intentional breach of patient confidentiality by accessing your entire health record inappropriately. … There appears to have been intentional, not accidental, unauthorized effort to access PHI and then use it to threaten you." Pl.'s Opp. at 8, Exhibit 4. Captain Taylor's investigation, conducted by CDR Carver, similarly determined that CDR Sokolowski exceeded the normal protocols when conducting his Quality Assurance review and reviewed personal health records he was not authorized to review. CDR Carver further determined that CDR Sokolowski used the QA review as a pretext to review CDR Cacho's entire health record to gather information that he could use against CDR Cacho. Pl.'s Opp. at 9, Exhibit 5, Report of Investigation. To establish a *prima facie* case of improper disclosure, it is enough to show that CDR Sokolowski unlawfully or improperly accessed CDR Cacho's personal health information. *Bigelow, supra*.

Contrary to Defendant's arguments, CDR Sokolowski had no need to know the information contained in CDR Cacho's flight physical for the performance of his duties as the QA review officer, or information contained in any other part of his medical record that lay outside the scope of the QA review. CDR Sokolowski's charge was simply to review

"prescription forms CG5344, NAVMED 6710/11, and DD1289 for schedule II through V medications and ensure the patient has signed the back of the prescription form." Pl.'s Opp. at 7, Exhibit 5, Report of Investigation, at p. 2, ¶ 4. And as CDR Gordon noted, CDR Cacho was not taking any schedule II through V medications. Exhibit 5, Summary of Interview with CDR Stanley Gordon.

The evidence of record is clear that CDR Sokolowski intentionally and willfully accessed personal health information pertaining to CDR Cacho that he was not authorized to review. He then disclosed that information to Lt Jarvi, CDR Gordon, and CDR Marshall, not in the context of professional concern, but to advise them of his intention to use the information to reprise against CDR Cacho.

Defendant would have the Court believe that CDR Sokolowski, by virtue of his position as a pharmacist, could review CDR Cacho's entire record at will. He could do so during duty hours and after duty hours. Defendant does not indicate any restrictions on CDR Sokolowski's authority in this regard. The Coast Guard's own regulations undermine Defendant's argument.

As CDR Cacho extensively argued in his opposition memorandum, Coast Guard regulations do not grant pharmacists general authority to access and review patient records. Pl.'s Opp. at 14-20. The provision principally relied on by Defendant, Medical Manual Article 10.A.4.a, does not authorize pharmacists general access to medical records. Indeed, it specifically limits the documents a pharmacist needs to access in prescribing medication. Article 10.A.4.a merely states: "<u>At the present, all CG pharmacies are migrating to CHCS/PGUI and POE as per Chapter 14 of this Manual</u>. That is the preferred method of prescribing for CG providers. However, until this process is fully implemented, an acceptable alternative remains prescribing using the Medical Record. At all clinics and sickbays, prescribe medications on an

SF-600 in the medical record, or when appropriate, SF-558, Emergency Care and Treatment. The medical record thus becomes a more comprehensive repository for all patient health information and also ensures the pharmacy staff has access to the necessary clinical information (age, weight, allergies, lab values, vital signs, etc.) to provide complete pharmaceutical care. In clinics that maintain dental records separately, the dental staff may use prescription forms or write prescriptions on a SF-603A." (Original emphasis.)

The intent of the Coast Guard in this provision is to ease pharmacy access to "necessary clinical information." Even under an expansive interpretation of this provision, authority cannot be found for general reviews of a patient's entire medical record, and certainly not reviews conducted for improper purposes. And as CDR Cacho demonstrated in his opposition memorandum, Medical Manual Article 4.A.1.a (6), also relied on by Defendant, authorizes nothing; it merely states the reasons for the creation and maintenance of personal health records. Pl.'s Opp. at 16. The Coast Guard regulations do not even hint at a need for pharmacists to review patient flight physicals. *See* Medical Manual Chapter 4.A.3.c.

In sum, CDR Sokolowski was authorized to review only CDR Cacho's medical record within the specified parameters of the QA review. Investigation found that he exceeded those parameters and did so intentionally and willfully. The Privacy Act is designed to prevent exactly the type of search of confidential medical records that CDR Sokolowski undertook in this case.

## CONCLUSION

In light of the record developed in this matter, CDR Cacho respectfully submits that the Court should deny Defendant's motion to dismiss or for summary judgment. The case should be allowed to proceed to discovery.

5

Respectfully submitted,

/s/

Raymond J. Toney (Bar No. NY0066)
The Law Office of Raymond J. Toney
34-16 30th Avenue, Third Floor
Astoria, NY 11103
Tel: 718-726-3656
Fax: 718-504-4735

David P. Sheldon (D.C. Bar # 446039)
The Law Offices of David P. Sheldon, PLLC
512 8th Street, S.E.
Washington, DC 20003
Tel: 202-546-9575
Fax: 202-546-0135

*Attorneys for Plaintiff*

6