UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIE CACHO, M.D.,<br>Commander, U.S. Public Health Service<br><br>Plaintiff,<br><br>v.<br><br>THE HONORABLE MICHAEL CHERTOFF<br>Secretary, Department of Homeland Security<br><br>Defendant. | )<br>)<br>)<br>)   C.A. No. 1:06CV00292 (ESH)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

DEFENDANT'S RESPONSE TO PLAINTIFF'S SURREPLY

Plaintiff sought and was given permission to address the "new" argument made by defendant in defendant's reply to plaintiff's opposition to defendant's dispositive motion. Defendant was permitted to respond to plaintiff's surreply. Minute Order of 9/26/06.

The only new argument in defendant's reply relates to the withdrawal of defendant's concession, for the purpose of his dispositive motion, that plaintiff could prove the first prong of the Privacy Act test. That prong requires plaintiff to show that the disclosed information at issue was a "record" contained within a "system of records."[1] In his opposition, plaintiff only established that the disclosed information was the absence of a record. As plaintiff failed to carry his burden of showing a "record" was disclosed in his opposition, defendant withdrew his concession and addressed plaintiff's failure in his reply. Plaintiff was given a "consented to" opportunity to respond to defendant's argument in a surreply and defendant was permitted to respond.

---

[1] See Fisher v. National Institutes of Health, 934 F. Supp. 464, 468, (D.D.C. 1996), aff'd, 107 F.3d 922, 1996 WL 734079 (D.C. Cir. 1996). The four prongs are:"(1) the disclosed information is a 'record' contained with a 'system of records'; (2) the agency improperly disclosed the information; (3) the disclosure was willful or intentional; and (4) the disclosure adversely affected the plaintiff." (Emphasis added). Logan v. Department of Veterans Affairs, 357 F.Supp.2d 149, 154 (D.D.C. 2004) (citing Fisher v. National Institutes of Health, supra). As set forth in defendant's opening brief, plaintiff has failed to meet any of these essential elements.

Defendant's response is in two parts: Part I addresses plaintiff's assertion that he has met the first prong of the Privacy Act test; Part II responds to the other arguments plaintiff makes in his surreply.

I.

The totality of plaintiff's surreply addressing defendant's "new" argument is found at pages 1-2 of his surreply. Plaintiff relies on the definition of "information" in Webster's Collegiate Dictionary, Eleventh Edition, 2003, to establish that, in his view, a disclosure of a record equates to obtaining knowledge of information.[2] He concludes that "[Commander Sokolowski] learned [from the medical record] that CDR Cacho had not listed a [disqualifying] medical condition and a medication for that condition on his most recent flight physical . . ." and this was "clearly disclosed 'information' obtained from a record . . ." Plaintiff's Reply at 1-2. The plain language of the definitions found in the statute, 5 U.S.C. § 552a, belies this rationale.

In order to make out a prima facie case for an improper disclosure of information in violation of the Privacy Act, a plaintiff must establish that: "the disclosed information is a 'record' contained with a 'system of records.'" Fisher v. National Institutes of Health, 934 F. Supp. at 468. The statute defines a "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency, including . . . medical history, . . . that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." 5 U.S.C. § 552a(a)(4). The statute defines "system of records" as a "group of records . . . from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. §552a(a)(5).

---

[2] This is in furtherance of plaintiff's new argument discussed in Part II that improper access is sufficient to establish a violation of the Privacy Act.

The Privacy Act only places conditions on the disclosure of records, not on the disclosure of the absence of a record or information. 5 U.S.C. § 552a(b). Indeed, there is nothing in the plain language of 5 U.S.C. § 552a(a)(Definition) or (b)(Conditions of disclosure) that supports plaintiff's position that the disclosure of the absence of information is within the Privacy Act's limited waiver of sovereign immunity.

It is well settled that, "[t]he meaning of the statute must, in the first instance, be sought in the language of the statute itself. If the language is clear and unambiguous, a court must give effect to its plain meaning." Grachow v. United States Customs Service, 504 F. Supp. 632, 634 (D.D.C. 1980). As a waiver of sovereign immunity, the Privacy Act is to be strictly construed in favor of the sovereign. See United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992); Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); McMahon v. United States, 342 U.S. 25, 27 (1951). The construction of the statute favoring the sovereign must be followed as long as it is "plausible." Nordic Village, 503 U.S. at 37. The rule of strict construction applies. Monark Boat Company v. NLRB, 708 F.2d 1322, 1327 (8th Cir. 1983) (rejecting argument that Equal Access to Justice Act should be broadly construed because of its remedial character, in favor of strict construction as a waiver of sovereign immunity), cited with approval in In re Nofziger, 938 F.2d 1397, 1403 (D.C. Cir. 1991); see also Tomasello v. Rubin, 167 F.3d 612, 617-18 (D.C. Cir. 1999); cf. Lane v. Pena, 518 U.S. 187, 192 (1996)(applying strict construction to waiver of sovereign immunity in case brought under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791-794); Martin v. Sec'y of HHS, 62 F.3d 1403, 1405 (Fed. Cir. 1995) (same with respect to case brought under National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-1 to -34).

Accordingly, because plaintiff's cause of action is based on an alleged disclosure of the absence of information in his medical record, not a record as defined by the Privacy Act, his cause of action should be dismissed.

II.

The remainder of plaintiff's surreply focuses on his new position that he can establish a prima facie Privacy Act cause of action, based on improper disclosure of Privacy Act records, by merely showing that CDR Sokolowski improperly accessed his medical record.[3] This argument should be ignored by the Court, as untimely, as the parties are required to raise all of their affirmative arguments in their opening briefs. See Corson & Gruman Co. v. Nat'l Labor Relations Bd., 899 F.2d 47, 50 n. 4 (D.C.Cir.1990).

In support of his new argument, plaintiff cites Bigelow v. DOD, 217 F.3rd 875 (D.C. Cir. 2000), cert. denied, 532 U.S. 971 (2001), and then asserts that--like the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d through d-8, as implemented by 45 C.F.R. Part 164, where improper use is sufficient to establish a violation--a violation of the Privacy Act based on improper disclosure can be established merely by showing that CDR Sokolowski improperly accessed his medical record. The Coast Guard will demonstrate that Bigelow does not provide any support for plaintiff's position, then, as it did in its Reply to Plaintiff's Opposition, the Coast Guard will address the argument that plaintiff can establish a Privacy Act violation based on improper disclosure by focusing on CDR Sokolowski and his access to plaintiff's medical record,

---

[3] In his Complaint, plaintiff alleges that CDR Sokolowski improperly disclosed Privacy Act records to others at the Air Station Miami clinic, around late June 2004. R. 1 at ¶ 13. CDR Sokolowski only disclosed the absence of records to CDR Gordon and LT Jarvi. Any additional disclosures were made by plaintiff himself or resulted from plaintiff's disclosures to Health program personnel at Coast Guard Headquarters and the Maintenance and Logistics Command.

rather than focusing on the agency officials to whom disclosures were made, CDR Gordon and LT Jarvi, and their need to know.

Plaintiff's citation to Bigelow is misguided. Bigelow did not simply involve a situation in which an agency official allegedly improperly accessed personal information. In that case, the court found that Bigelow's superior, Colonel Noyes, went to the Joint Staff Security Office and requested Bigelow's personal security file. 217 F.3d at 876. After reviewing Bigelow's personal security file, Colonel Noyes referred the matter to the Air Force for disciplinary action. Id. Accordingly, in the Bigelow case, there arguably was an improper agency disclosure when the Joint Staff Security Office provided records to Colonel Noyes, and again when Colonel Noyes referred the matter to the Air Force for disciplinary action. The court in Bigelow ultimately held that Colonel Noyes had a need to know the information disclosed to him by the Joint Staff Security Office and, therefore, the disclosure was not improper. Id. Bigelow does not stand for the proposition that a Privacy Act cause of action can be established merely by showing that an agency official improperly accessed personnel information. As the Coast Guard noted in its reply to CDR Cacho's opposition, it appears that CDR Cacho is confusing a HIPAA violation with a Privacy Act cause of action. Improper access to personal health information may be sufficient to establish a HIPAA violation, but HIPAA does not create a private cause of action for such a violation. Reply at 3, footnote 1 and related text. Improper access to personal health information, by itself, is not sufficient to allege a Privacy Act cause of action.

For one thing, a cause of action under 5 U.S.C. § 552a(g)(1)(D) requires that the agency fail to comply with the Privacy Act "in such a way as to have an adverse effect on an individual." In other words, in a case like CDR Cacho's, the plaintiff must prove that the improper disclosure caused actual damages to the individual. In Bigelow, it appears that the plaintiff's alleged damages resulted

5

from the disciplinary action that was taken against him based on Colonel Noyes's referral of the matter to the Air Force for disciplinary action. 217 F.3d at 876. Therefore, the disclosure that would have been actionable, if it was improper, was Colonel Noyes's disclosure of Privacy Act records to the Air Force for disciplinary action.

Likewise, in this case, even if CDR Sokolowski's allegedly improper accessing of CDR Cacho's medical record could be considered an improper disclosure, there is no evidence that by itself that disclosure had any adverse effect on CDR Cacho. It was only after CDR Sokolowski made disclosures to CDR Gordon and LT Jarvi that CDR Cacho learned that CDR Sokolowski had accessed his medical record. If the disclosures to CDR Gordon and LT Jarvi were not improper, then any adverse effect resulting from those disclosures is not a basis for a Privacy Act cause of action. And as the Coast Guard has previously demonstrated in its opening brief, the adverse effects that CDR Cacho has suffered resulted from his own disclosure of his failure to timely report his medical condition, and that he was taking medications for it, not from any disclosures originating with CDR Sokolowski.

In addition to improperly citing Bigelow for support, plaintiff argues without any other authority, that he can establish a Privacy Act violation, based on improper disclosure, by showing that CDR Sokolowski improperly accessed his medical record, and without showing any further disclosure. At page 3 of his Surreply, plaintiff states: "To establish a prima facie case of improper disclosure, it is enough to show that CDR Sokolowski unlawfully or improperly accessed CDR Cacho's personal health information. Bigelow, supra." In summation at page 5 of the Surreply, plaintiff states:

> In sum, CDR Sokolowski was authorized to review only CDR Cacho's medical record within the specified parameters of the QA review. Investigation found that he exceeded those parameters and did so intentionally and willfully. The Privacy Act is designed to prevent

6

exactly the type of search of confidential medical records that CDR Sokolowski undertook in this case.

Surreply at 5.

As the Coast Guard noted in its Reply to Plaintiff's Opposition, Reply at 3-7, plaintiff has failed to establish that there was an improper disclosure in violation of the Privacy Act, and he is confusing the Privacy Act with HIPAA. The quotations above state the basis for establishing a HIPAA violation for improper use of a medical record. 45 C.F.R. § 164.502. The Coast Guard found that CDR Sokolowski violated HIPAA and took appropriate action to address the violation. However, HIPAA does not provide a private cause of action. Reply at 3, footnote 1, and related text. The Privacy Act provides for a private cause of action, but such an action cannot be based on a mere improper use violation of HIPAA.

Plaintiff alleges that his Privacy Act action is based on improper disclosure, but now he argues that he only needs to show that CDR Sokolowski improperly accessed his medical record. In its Reply to Plaintiff's Opposition, the Coast Guard pointed out that plaintiff was misguided or confused when he focused on CDR Sokolowski and his access to CDR Cacho's medical record, rather than the agency officials to whom disclosures were made and whether they had a need to know. Reply at 3-4.

Plaintiff, in his Opposition, did not respond to the Coast Guard's position that Article 10.A.4.a. of the Medical Manual authorized CDR Sokolowski to access CDR Cacho's medical record. Taking the opportunity now to try to cure that lapse, plaintiff claims that the intent of Article 10.A.4.a. is to authorize limited access to medical records. Surreply at 4-5. The Coast Guard agrees that the intent of the provision as it applies to pharmacists is to "ensure[] the pharmacy staff has access to the necessary clinical information (age, weight, allergies, lab values, vital signs, etc.) to

provide complete pharmaceutical care." Article 10.A.4.a., Medical Manual. But, while this section may suggest some limitations on the type of information a pharmacist should be looking for, it does not limit where in the medical record a pharmacist may look for information. Article 10.A.4.a. authorizes pharmacists to access a patient's entire medical record, without limitation as to where a pharmacist may look. The article lists information the Coast Guard wants to ensure that pharmacists have access to, and the "etc." in the list makes it clear that the list is not exhaustive. Plaintiff's interpretation of the intent of Article 10.A.4.a. is not supported by the plain text and is simply wrong. The Coast Guard reasonably interprets Article 10.A.4.a. to mean that a pharmacist, such as CDR Sokolowski, is authorized to access the entire medical record.

Whereas Article 10.A.4.a. clearly authorizes a pharmacist such as CDR Sokolowski, to access medical records, Article 4.A.1.a.(6) of the Medical Manual describes one of the purposes of keeping medical records. The Coast Guard asserts that the Court can infer from that purpose that a pharmacist, as a quality assurance or medical records person, must have access to medical records to facilitate communications with health care providers in the clinic. This is consistent with the position the Coast Guard stated in its Dispositive motion at p. 6 and its reply, p. 4, n. 2.

But as noted previously, for purposes of the element of plaintiff's Privacy Act cause of action requiring proof of an improper disclosure of a Privacy Act record, where, as here, the Coast Guard asserts that the disclosures were to agency officials with a need to know, the plain language of the Privacy Act, 5 U.S.C. § 55a(b)(1), focuses--not on the discloser and his authority to access records or his motive for making disclosures--but on the agency officials to whom disclosures were made and whether there was a need to know. Reply at 3-4. In its Dispositive motion, at 9, 13-17, and in its Reply to Plaintiff's Opposition, at 5, the Coast Guard has shown that both CDR Gordon and LT Jarvi were agency officials with a need to know the information disclosed by CDR Sokolowski. In its

8

reply, the Coast Guard also demonstrated that there was no disclosure of Privacy Act records to Commander Marshall and no evidence of actual damages related to the alleged disclosure to Commander Marshall. Id. at 6-7.

CDR Cacho is grasping at straws when he asserts that he has established a prima facie case if he can show that CDR Sokolowski improperly accessed his medical record. Bigelow does not state that merely reviewing a Privacy Act record is an improper disclosure. Neither does the fact that HIPAA limits use of medical records mean that showing improper access to a medical record is sufficient to establish a violation of the Privacy Act based on improper disclosure. If CDR Cacho cannot prove even one element of his Privacy Act cause of action, his opposition to the Coast Guard's motion must fail.

### III. Conclusion

For the foregoing reasons, defendant respectfully requests that the complaint in this case be dismissed or summary judgment entered in defendant's behalf.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

OF COUNSEL:

ROBERT BRUCE, Esq.
Attorney, Office of Claims and Litigation
U.S. Coast Guard