# EXHIBIT 1

# U. S. DEPARTMENT OF HOMELAND SECURITY



# UNITED STATES COAST GUARD (USCG)

# REPORT OF INVESTIGATION

INVESTIGATION conducted by: _Susan C Holmes_  _9/16/2005_

INVESTIGATOR NAME    DATE
JDG Associates, Inc.

U. S. DEPARTMENT OF HOMELAND SECURITY

Warren U. Bolden
Formal Complaints Program Manager
Civil Rights Directorate
U.S. Coast Guard Headquarters
2100 Second Street, SW, Room 2400
Washington, DC 20593-0001

## COMPLAINANT'S NAME:  CDR WILLIE CACHO
## COMPLAINT NO.:    CGM-05-0026

This document for **OFFICIAL USE ONLY** and is not to be distributed outside of your agency without prior clearance

**Indefinite Retention**

# EXHIBIT 2

# U. S. DEPARTMENT OF HOMELAND SECURITY



# UNITED STATES COAST GUARD (USCG)

# REPORT OF INVESTIGATION

INVESTIGATION conducted by: *Susan C. Holmes*   *9/16/2005*

INVESTIGATOR NAME    DATE
JDG Associates, Inc.

U. S. DEPARTMENT OF HOMELAND SECURITY

Warren U. Bolden
Formal Complaints Program Manager
Civil Rights Directorate
U.S. Coast Guard Headquarters
2100 Second Street, SW, Room 2400
Washington, DC 20593-0001

COMPLAINANT'S NAME: CDR WILLIE CACHO
COMPLAINT NO.:    CGM-05-0026

This document for **OFFICIAL USE ONLY** and is not to be distributed outside of your agency without prior clearance

**Indefinite Retention**

because he only serves as a technical observer when he accompanies the Coast Guard on flight missions. Complainant states:

> I was waiting to disclose my condition, until I was ready to get everything ready to get the medical waiver. I did not hide this information from my health records, pharmacy, lab screening and consults...I had no malicious intent in what I did. (Tab F-1a)

Complainant states that the Coast Guard Personnel Command revoked his Flight Surgeon status on the recommendation of Captain Keith Taylor, Commanding Officer of Air Station Miami. Complainant states that Captain Taylor's reason for the recommendation was that Complainant failed to disclose his condition during a physical examination. Captain Taylor also noted that as a physician, Complainant should have known better. (Tab F-1a)

Complainant states that Captain Taylor learned that he had failed to disclose the condition from Commander Alan Sokolowski. Complainant explains that Commander Sokolowski was one of his subordinates in the Health Services Department to whom he had given a "repetitive below average performance rating" on June 18, 2004. He states that on that date, he informed Commander Sokolowski that he would have to meet with Captain Taylor regarding the review. According to Complainant, CDR Sokolowski threatened him, saying, "If you fuck me, I will fuck you." (Tab F-1a)

Complainant produced an unsigned, undated statement from PO J. Weimer, regarding this statement from Commander Sokolowski to Complainant. (Tab F-2a) The Investigator attempted to contact PO Weimer to interview him. PO Weimer did not return the Investigator's telephone message or electronic mail. (Tab G-4)

Complainant states that after the disagreement with CDR Sokolowski, he was deployed out and was gone over three weeks. He contends that during his absence, CDR Sokolowski went through his medical records. According to Complainant, CDR Sokolowksi contrived a reason to allow him to inspect medical records. Complainant states that, "Suddenly [CDR Sokolowski] decided to conduct a QA (Quality Assurance) record review survey for controlled substances." (Tab F-1a)

Complainant relates that CDR Sokolowski chose his medical record as one of the records he would review. Complainant contends that CDR Sokolowski reviewed a part of his medical record which he did not need to see for the purpose of the survey he was conducting. Complainant states that although there was a subsequent investigation of CDR Sokolowski's actions, ultimately "The CO didn't do anything to [CDR Sokolowski.] Complainant adds that CDR Sokolowski is White, and he does not know his national origin. (Tab F-1a)

Complainant states that the decision to revoke his Flight Surgeon status was prompted by Captain Taylor. Complainant states that he had just received a Commissioned Officer's Effectiveness Report (COER) in September 2004, in which he received a rating of

COMPLAINT OF: _____ H.
CASE NO.: CGM: 05-0026

The Agency identified the online location of the U.S. Department of Homeland Security, United States Coast Guard **MEDICAL MANUAL,** COMDTINST M6000.1B. Relevant portions of the Manual are included at Tab F-2d.

Chapter 1, **ORGANIZATION AND PERSONNEL,** contains descriptions of the duties of medical personnel, including the Flight Surgeon and the Chief of Health Services, the positions held by Complainant. The description for Flight Surgeon defines the duties of the position. These duties do not include providing medical care during an evacuation, as stated by Captain Taylor. (Tab F-2d(1))

Chapter 3, **PHYSICAL STANDARDS AND EXAMINATION** contains the required physical standards of Coast Guard members, conditions which are disqualifying, including diabetes, a copy of the Physical Examination form, a definition of a :waiver" and the procedure for obtaining a waiver. (Tab F-2d(2))

> **Issue 1 b.** **Was Complainant discriminated against because of his Race (Hispanic) and his National Origin (Puerto Rican) when management officials at U.S. Coast Guard, Air Station Miami subjected him to disparate treatment by:**
>
> **b. Issuing a letter of censure to Complainant.**

**Complainant** substantially states the following in his affidavit (Tab F-1a):

Complainant states that Captain Keith Taylor issued a letter of censure to him. According to Complainant, in the letter, Captain Taylor stated that he wanted to remove Complainant as the head of the Health Services Department; replace him with another individual; request that he be transferred out of Air Station Miami, and issue an Interim COER which would address the issues leading to the revocation of Complainant's Flight Surgeon status. (Tab F-1a)

Complainant does not believe that Captain Taylor issued a letter of censure to Commander Sokolowski, even though the Commander committed serious actions when he improperly reviewed medical records. Complainant states that he believes Captain Taylor issued the letter of censure to him because of his race and national origin. He adds that Captain Taylor did not issue a letter of censure to other individuals who committed the same offense as Complainant did. (Tab F-1a)

**Captain Keith Taylor** substantially states the following in his affidavit (Tab F-1b):

Captain Taylor issued a letter of censure to Complainant on September 27, 2004. He explains that the letter of censure is a letter documenting his concerns about his performance. Captain Taylor states, "It is the lesser of the tools I have available to me in the area of punishment. It is not made a part of the member's permanent personnel file, and is not forwarded." Captain Taylor states that the letter itself is "non-punitive" and is not forwarded up the chain of command. (Tab F-1b)

COMPLAINANT: KURT SCHILLO
CASE NO.: CGM: 05-0026

the Commander reviewed Complainant's medical record. Complainant also believes that Captain Taylor was aware of these violations of his rights, and condoned them because he took no real action against Commander Sokolowksi. Complainant states that he also reported the violations to Rear Admiral Higgins, the Commanding Medical Officer, but received no response from the Admiral. (Tab F-1a)

**Captain Taylor** substantially states the following in his affidavit (Tab F-1b):

Captain Taylor states that Commander Sokolowski did review Complainant's medical records, but the review was part of a Quality Assurance review. Captain Taylor asserts that such a review is part of the normal course of business. Captain Taylor contends that Commander Sokolowski had the authority to review Complainant's record, and also reviewed other records during the review. Captain Taylor states that he had "certain concerns" and "fully investigated" Commander Sokolowski's actions. Captain Taylor states that he took appropriate action at the conclusion of this investigation, but is uncomfortable discussing exactly what action was taken. (Tab F-1b)

**Commander Stanley Gordon** substantially states the following in his affidavit (Tab F-1d):

Commander Gordon states that he really does not know if Commander Sokolowski was exceeding his authority when he reviewed Complainant's medical record. He states that he assigned the task to Commander Sokolowski, and gave him the authority to look in medical records to determine if certain information was there. Commander Gordon adds that if Commander Sokolowski intentionally looked for other things in the records, beyond his task, then he did violate Complainant's Privacy Right and HIPAA rights. Commander Gordon states that he knows that Captain Taylor felt that Commander Sokolowski did exceed his authority. He relates, "There was a Captain's Mast and [Commander Sokolowski] was reprimanded. (Tab F-1d)

**LT Jarvi** substantially states the following in his affidavit (Tab F-1e):

LT Jarvi states that in his opinion, Commander Sokolowski did exceed his authority when he was reviewing medical records. He believes that Commander Sokolowski was reviewing an area of Complainant's medical record which he did not need to review in order to complete his assignment. (Tab F-1e)

Other evidence:

The Agency provided a copy of the HIPAA procedures followed by Air Station Miami. The procedures were prepared on February 4, 2005. (Tab F-2f)

> **Issue 1 d.**   **Was Complainant discriminated against because of his Race (Hispanic) and his National Origin (Puerto Rican) when management officials at U.S. Coast Guard, Air Station Miami subjected him to disparate treatment by:**

# EXHIBIT 3

THE LAW OFFICE
OF RAYMOND J. TONEY

19 January 2006

Ms. Stephanie Credle
Area Director of Civil Rights
300 E. Main Street, Suite 350
Norfolk, VA 23510

Subject: EEO Complaint of Dr. Willie Cacho

Dear Ms. Credle,

I am writing to request that you include this letter with the EEO Report of Investigation for consideration by the authority that will be issuing a recommended decision in Dr. Cacho's case. I believe the information will be useful in the adjudication of his discrimination claim.

**Factual Errors**

Dr. Cacho has identified several factual errors within the ROI that need to be corrected prior to the issuance of a recommended decision in his case. These errors are specified below. Modifications are underlined.

Investigator's Summary:

Page 1, 4th Paragraph

The last sentence should read: "Complaint further states that before May 2003, Metformin was on the list of drugs for which an individual would need a waiver. (Tab F-1a).

Page 1, 5th Paragraph

The paragraph should read: "Complainant states that he began taking Metformin in November 2002 and was also taking the drug Atenolol for hypertension. Complainant states that Atenolol is a drug for which the Coast Guard will issue a waiver."

Page 2, 3rd Complete Paragraph

The paragraph should read: "Complainant produced a signed, undated statement from PO J. Weimer, regarding this statement from Commander Sokolowski to Complainant.

34-16 30th Avenue
Third Floor
Astoria New York 11103
T+F 718 726 3656
www.rjtlaw.net
rjtoney@rjtlaw.net

Page 4, 1st Paragraph

This paragraph should read: "Complainant states that the investigation also revealed <u>five</u> other White Aircrew members at Air Station Miami who had medically disqualifying positions."

Page 4, 3rd Paragraph

This paragraph should read: "Captain Taylor states that Complainant was his Chief of Medical Services, and was also designated as a "Flight Surgeon." Captain Taylor explains that the term "Flight Surgeon" is a special designation from the <u>USCG Personnel Command</u>, and is given to individuals who have specific training in Aeromedicine."

## General Comments

CDR Cacho previously supplied a rebuttal to Captain Taylor's sworn statement. That rebuttal is included in the ROI as Exhibit "F1c" and totals 6 pages. He now provides additional observation and comment relevant to the record of investigation.

CDR Cacho's complaint obviously is one of discrimination. The evidence of record strongly demonstrates that the Coast Guard did in fact treat CDR Cacho in a discriminatory and disparate manner based on his race (Hispanic) and national origin (Puerto Rico).

In his affidavit, Captain Taylor admitted that the Coast Guard determined that approximately 8-10 other members, some of them aviators, also had "anomalies" in their medical records. He likewise stated that "<u>I think they did identify some individuals with conditions that were considered disqualifying</u>." Taylor Affidavit, page 8. (Emphasis added.)

In response to the investigator's question of whether the Focused Review Team identified any other members who had failed to disclose information required to be disclosed, at pages 13-14 of his affidavit, Captain Taylor states as follows: "[a]s far as I recall, none of the issues the Focused Review Team raised, outside of Commander Cacho's own case, had anything to do with disclosure issues. I wanted to clarify that because it was raised during our last interview."

At page 17 of his affidavit, Captain Taylor did state that "<u>I am aware of three cases that came to light as a result of my directed clinic-stand-down, or during the fall of 2004, where members had potential issues regarding disclosure on their Flight Physicals. Each of these was fully reviewed and appropriate follow-up action taken</u>. In all three cases, none involved current medical conditions or medications, and all three involved past issues that had been resolved. Each of these cases was very different from CDR Cacho's and none of the individuals involved was a Flight Surgeon." (Emphasis added.)   Captain Taylor does not address, however, the crucial question of whether those individuals had disclosed the required information at the time the issues or conditions existed.

Captain Taylor stated in his affidavit, as well as in his narrative justifying his issuance of an Unsatisfactory Aeronautical Adaptability determination, that he took actions against CDR

Cacho because "I had lost confidence in Commander Cacho's ability to serve as my Flight Surgeon and as my Chief of Health Services." Taylor Affidavit, p. 15. (Emphasis added.)

Captain Taylor further stated that "[m]y concern was that Commander Cacho failed to meet the appropriate standards as a senior officer in the Coast Guard and as set forth in the Aviation Medical Manual when he failed to disclose significant medications and a medical condition on his last flight physical. He knowingly concealed this information, which resulted in his physical being completely erroneous, and as a result he erroneously remained in a fit for flight duty status." (Emphasis added.) Taylor Affidavit, p. 15.

Captain Taylor's responses confirm that other similarly situated members also were identified has having failed to disclose required medical information on their flight physicals. Captain Taylor states that these individuals were identified, their cases reviewed, and proper follow-up action taken. Captain Taylor's effort to distinguish his treatment of those individuals from that of CDR Cacho, however, fails, and plainly demonstrates the discriminatory treatment that CDR Cacho claims he was subjected to. Although the evidence of record does not specify this fact, one or more of the officers identified as having failed to disclose required medical information may be senior officers and aviators.

We first note Captain Taylor's stated justification for his actions against CDR Cacho. He acted against CDR Cacho allegedly because CDR Cacho's failure to disclose his medical information caused him to "lose confidence in CDR Cacho's ability to serve as his Flight Surgeon and as my Chief of Health Services." Captain Taylor's reasoning is clear: because CDR Cacho failed to disclose required information on his Flight Physical, Captain Taylor lost confidence in his abilities. The evidence of record demonstrates, however, that Captain Taylor applied a different standard to non-minority officers who also failed to disclose required medical information, or who were currently performing duties while having disqualifying medical conditions.[1]

All Coast Guard officers are held to the same general ethical and professional standards, regardless of the duties they perform. Indeed, equal treatment of similarly situated individuals is a hallmark of non-discrimination. One of those standards is honesty. As applied to CDR Cacho's EEO complaint, all Air Station Miami officers, whether pilots, flight crew members, or medical officers, are required to answer all flight physical information accurately and truthfully. The flight physical does not provide a cut-off date whereby relevant past information need not be disclosed. Rather, all questions must be answered fully and truthfully.

According to his own sworn testimony, Captain Taylor, who certainly was aware of the Coast Guard's policy on non-discrimination, applied a different standard of honesty and professionalism to the three officers he identified as having "disclosure issues." He effectively excused those officers' failures and their improprieties did not cause him to lose trust in them, even though their conduct was equal to that of CDR Cacho. As noted above, one or more of those individuals were pilots and senior officers. All are white and of European ancestry.

---

[1] See Taylor Affidavit at page 8.

One or more of the other officers identified as having failed to disclose required medical information are responsible for the safe operation of multi-million dollar aircraft and sea and land rescue efforts. They also are responsible for the safety of the crewmembers that fly with them. It is inexplicable why Captain Taylor did not appreciate their improprieties to carry the same or even greater potential adverse consequences than did CDR Cacho's non-disclosure. The honesty and integrity of those officers was impugned, when viewed objectively, to the same degree as CDR Cacho's. As senior officers, they were under the same obligation as CDR Cacho to provide accurate and truthful responses to flight physical questions. Contrary to Captain Taylor's assertion, CDR Cacho's position as a Flight Surgeon did not impose on him a higher standard. If anything, aviators responsible for aircraft and crewmember safety should be held to a higher standard than CDR Cacho.

The "non-discriminatory" reasons advanced by Captain Taylor for his differential and unduly harsh treatment of CDR Cacho are without merit.

**Coast Guard's Failure to Provide the Investigator with Necessary Documentation**

The ROI of CDR Cacho's EEO complaint is grossly deficient due to the absence of highly relevant documentation. This documentation should have been obtained during the course of the investigation. The inclusion of those materials is critical to a fair and accurate disposition of CDR Cacho's complaint.

The ROI references several actions that generated relevant documentation. Those actions are: 1) the findings of the Focused Review Team; 2) the findings of Captain Taylor's inquiries into the three officers he identified as having failed to disclose required medical information; 3) documentation pertaining to CDR Sokolowski's authority to conduct a Quality Assurance Review; 4) documentation pertaining to the results of Captain Tailor's stand-down and review of the medical clinic; 5) documentation pertaining to the alleged Captain's Mast of CDR Sokolowski referenced by Captain Stanley Gordan at page 4 of his affidavit; 6) documents pertaining to the investigation directed by Captain Taylor into CDR Sokolowski's conduct, and action taken against him by Captain Taylor, as referenced at page 7 of Captain Taylor's affidavit; and 7) documents pertaining to the command's responses to the individuals identified by the Focused Review Team as having disqualifying medical conditions.[2]

The critical comparative data contained in those documents would demonstrate the Coast Guard's discriminatory treatment of CDR Cacho. The documents would demonstrate gross inaccuracies in witness statements, such as CDR Gordon's claim that he "assigned Commander

---

[2] At page 6 of the ROI, at footnote 2, the investigator stated that she "requested information from the Agency regarding any other individuals who had failed to disclose disqualifying information. The Agency reported that no such documentation exists." The Agency's response directly contradicts the sworn testimony of Captain Taylor, in which he stated, "I think they did identify some other individuals with conditions that were considered disqualifying." See page 8, Taylor Affidavit. She also noted at page 22, footnote 4, that she had "requested Complainant's last three performance evaluations, however, only the June 2004 was provided by the Agency."

Sokolowski to review random records to insure that the records of those who were taking controlled substances contained the proper documentation."

The documentation also would demonstrate that Captain Taylor treated CDR Cacho in a discriminatory and disparate manner by approving waivers for aviators with disqualifying conditions while at the same time rejecting CDR Cacho's waiver request. It would further demonstrate that Captain Taylor treated CDR Sokolowski, who the Coast Guard found to have violated CDR Cacho's HIPAA rights, far more favorably than he did CDR Cacho for a lesser impropriety. The documents would further support CDR Cacho's argument that the other officer's who failed to disclose required medical information and/or who were performing their duties while having a medical disqualification were held to a lower standard than CDR Cacho.

It is imperative that the documents be obtained and carefully considered in formulating the agency's recommended decision on the merits of CDR Cacho's discrimination claims. A fair decision on the merits of CDR Cacho's complaint cannot be obtained without the review of the documents specified above. The documents, redacted as appropriate, also should be provided to CDR Cacho for his review and response.

Well over 6 months ago, CDR Cacho requested many of the above-identified documents through FOIA and Privacy Act requests. The Coast Guard has failed to disclose the documents or inform CDR Cacho of its denial of his request and the grounds therefore. CDR Cacho must now pursue the documents in federal court through a Privacy Act action.

Thank you for your consideration of this submission.

Respectfully,

Raymond J. Toney

# EXHIBIT 4

**LAW OFFICES OF DAVID P. SHELDON, P.L.L.C.**
BARRACKS ROW
512 8ᵀᴴ STREET, S.E.
WASHINGTON, D.C. 20003
TEL. (202) 546-9575    TOLL FREE (866) 546-9575
FAX (202) 546-0135
WWW.DAVIDSHELDONLAW.COM

DAVID P. SHELDON (DC, MD, MT)                           RAYMOND J. TONEY (NY)

August 24, 2005

Commandant (CG-11)
U.S. Coast Guard
Captain Deborah Noyes, Room 5314
2100 2ⁿᵈ Street, SW
Washington, DC 20593-0001

SUBJ: Privacy Act Request of CDR Willie Cacho, PHS, 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

Dear Sir/Ma'am:

        We represent CDR Willie Cacho. Pursuant to 5 U.S.C. § 552a, the Privacy Act, and 5 U.S.C. § 552(a), the Freedom of Information Act, and on behalf of CDR Cacho, we request any all documents that the Coast Guard maintains regarding its investigation of allegations by CDR Cacho that LCDR Sokolowski violated CDR Cacho's rights under the Health Insurance Portability and Accountability Act ("HIPPA"). We specifically request a copy of the Report of Investigation and all other documents generated in the course of the investigation.

        "Documents" include all notes, memoranda, electronic messages, and official government correspondence maintained by the U.S. Coast Guard. We have enclosed a release from CDR Cacho authorizing you to provide the documents to us. We will pay for fees and costs up to $250 for any reproduction entailed in obtaining these documents. We request a response within 20 days as provided for by the Freedom of Information Act.

        If you have any questions, please contact us immediately.

                                Respectfully submitted,

                                /s/ Raymond J. Toney

                                Raymond J. Toney
                                Attorney and Counselor at Law

Enclosure

Copy (w/encls) to:  CDR Wille Cacho

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commander
Seventh Coast Guard District

909 SE 1st Ave. Ste 918
Miami FL 33131-3050
Staff Symbol: (dl)
Phone: (305) 415-6950
Fax: (305) 415-6900

5720
FOIA 05-038

MAR **2 5** 2005

Law Offices of David P. Sheldon, P.L.L.C.
Barracks Row
512 8th Street S.E.
Washington, D.C. 20003
Attn: Mr. Raymond T. Toney

Dear Mr. Toney:

This letter responds to your Freedom of Information Act (FOIA) request of February 25, 2005. In your letter, you requested information involving CDR Willie Cacho, including documents regarding the revocation of his flight surgeon status, the letter of censure provided to CDR Cacho, and any other information pertinent to the investigation of CDR Cacho.

Please be advised that Coast Guard Air Station Miami is currently gathering responsive documents for my review. Following my review, I will respond to your request directly. Please provide your office's New York address if you want the documents mailed directly to you in New York. If you have any questions, please contact me at 305-415-6950. Thank you.

Sincerely,

P. D. Lehmann
Lieutenant
U.S. Coast Guard
Assistant District Legal Officer
By direction

**LAW OFFICES OF DAVID P. SHELDON, P.L.L.C.**
BARRACKS ROW
512 8TH STREET, S.E.
WASHINGTON, D.C. 20003
TEL. (202) 546-9575     TOLL FREE (866) 546-9575
FAX (202) 546-0135
WWW.DAVIDSHELDONLAW.COM

DAVID P. SHELDON (DC, MD, MT)     PHILIP SUNDEL (MD)     RAYMOND J. TONEY (NY)

April 26, 2005

LT Paul Lehmann
Assistant District Legal Officer
United States Coast Guard
909 Southeast 1st Avenue, Suite 918
Miami, Florida 33131-3050

SUBJ: Freedom of Information Act Request and Privacy Act Request of CDR Willie Cacho, PHS, 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

Dear Sir:

We represent CDR Willie Cacho. By letter dated February 25, 2005, and pursuant to 5 U.S.C. § 552a, the Privacy Act, and 5 U.S.C. § 552(a), the Freedom of Information Act, and on behalf of CDR Cacho, we previously requested any and all documents that Coast Guard Air Station Miami maintains relating to:

1) the revocation of CDR Cacho's flight surgeon status;
2) the letter of censure provided to CDR Cacho;
3) the interim COER issued to CDR Cacho;
4) all investigations of CDR Cacho;
5) any and all investigations of other Coast Guard officers, resulting from CDR Cacho's actions, found to have withheld or misrepresented medical information;
6) all investigations into the release of CDR Cacho's medical records by CDR Alan Sokolowski, PHS;
7) any corrective action taken by the Coast Guard against CDR Sokolowski because of his release of CDR Cacho's medical records; and
8) CDR Cacho's transfer from Air Station Miami to Cape May, New Jersey.

We now wish to amend this request to include all documents pertaining to any and all investigations of other Coast Guard officers, resulting from CDR Cacho's actions, found to have withheld or misrepresented medical information, or found not to have withheld or misrepresented medical information.

"Documents" include all notes, memoranda, electronic messages, and official government correspondence maintained by the U.S. Coast Guard. We have enclosed a release from CDR Cacho authorizing you to provide the documents to us. We will pay for fees and costs up to $250 for any reproduction entailed in obtaining these documents. We request a response within 20 days as provided for by the Freedom of Information Act.

If you have any questions, please contact us immediately. I may be reached directly at 718-726-3656.

Respectfully submitted,

Raymond J. Toney
Attorney and Counselor at Law

Enclosure

Copy (w/encls) to:

CDR Wille Cacho

2

**U.S. Department of
Homeland Security**

**United States
Coast Guard**

Commander (dl)
United States Coast Guard

909 SE 1st Ave.
Miami FL 33131-3050
Staff Symbol: (dl)
Phone: (305) 415-6950
Fax: (305) 415-6960

5720
FOIA 05-038

Mr. Raymond J. Toney
Attorney and Counselor at Law
34-16 30th Avenue, Third Floor
Astoria, NY 11103

Dear Mr. Toney:

This letter responds to your Freedom of Information Act (FOIA) follow up request of September 20, 2005 and October 6, 2005, for documents concerning the investigation of CDR Willie Cacho that was conducted by Air Station Miami in 2004.

As we previously agreed upon, readily releasable documents for your request were sent to you on June 2, 2005. In light of your recent request that remaining responsive documents be released, I ask that you provide a more specific statement of what documents you are still seeking.

Please provide a more specific request indicating the documents you desire and please keep in mind that certain documents may not be released due to the privacy act or other FOIA exemptions.

If you have any questions regarding your request, please contact me at the above number.

Sincerely,

P. D. LEHMANN
Lieutenant
Assistant District Legal Officer
U.S. Coast Guard
By direction

THE LAW OFFICE
OF RAYMOND J. TONEY


September 20, 2005

LT Paul Lehmann
Assistant District Legal Officer
United States Coast Guard
909 Southeast 1st Avenue, Suite 918
Miami, Florida 33131-3050

SUBJ: Freedom of Information Act Request and Privacy Act Request of CDR
Willie Cacho, PHS, 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

Dear Sir:

We represent CDR Willie Cacho. By letters dated February 25, 2005, and April 26,
2005, and pursuant to 5 U.S.C. § 552a, the Privacy Act, and 5 U.S.C. § 552(a), the Freedom
of Information Act, and on behalf of CDR Cacho, we previously requested a range of
documents in the custody and control of the Coast Guard.

We are grateful for your initial disclosures in this matter. We reiterate our request
for any remaining documents responsive to our previous requests. Please advise us as soon
as you are able whether any additional documents exist and the status of their disclosure.
Because CDR Cacho's original request was made more than six months ago, resort may
now be had in federal court to compel additional discovery.

If you have any questions, please contact us immediately. I may be reached at 718-
726-3656.

Respectfully submitted,

Raymond J. Toney
Attorney and Counselor at Law

Copy (w/encls) to:

CDR Wille Cacho

34-16 30th Avenue
Third Floor
Astoria New York 11103
T+F 718 726 3656
www.rjtlaw.net
rjtoney@rjtlaw.net

THE LAW OFFICE
OF RAYMOND J. TONEY

October 7, 2005

LT Paul Lehmann
Assistant District Legal Officer
United States Coast Guard
909 Southeast 1st Avenue, Suite 918
Miami, Florida 33131-3050

SUBJ: Freedom of Information Act Request and Privacy Act Request of CDR Willie
Cacho, PHS, 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

LT Lehmann,

Thank you for your response of October 7, 2005 to CDR Cacho's FOIA/PA request. The
purpose of this letter is to clarify the documents CDR Cacho requests.

In formulating our original request, I was made aware of investigations undertaken or
ordered by Captain Keith Taylor, Commander, Air Station Miami into CDR Sokolowski's
disclosure of CDR Cacho's medical information, and the possibility that aviators and aircrew
members withheld potentially disqualifying information from Coast Guard personnel.

In an affidavit signed by Captain Taylor in the course of CDR Cacho's EEO
investigation, he stated the following regarding CDR Sokolowski:

> Let me just say that I fully investigated Commander Sokolowski's actions. I
> assigned one of my senior officers to do the investigation  I used the same
> methodical process to look into those concerns.  I took appropriate action at
> the end of the investigation and that is all I can say.

He further acknowledged that he directed an inspection of medical records by a Focused
Review Team. In his EEO affidavit, Captain Taylor stated:

> I believe that, in their body of work, as they looked through the records,
> they may have identified eight to ten individuals who had some anomaly in
> their health record. It could have been something that was required, but not
> followed-up on, maybe they were required to submit documents, or maybe a
> follow-up examination.  I think they did identify some individuals with
> conditions which were disqualifying.

34 - 16 30th Avenue
Third Floor
Astoria New York 11103
T+F 718 726 3656
www.rjtlaw.net
rjtoney@rjtlaw.net

Our request is for all documents pertaining to Captain Taylor's referenced investigation of Commander Sokolowski and those pertaining to the Focused Review Team's inspection/investigation. Additionally, our request included all documents pertaining to follow-up investigations or actions involving the "eight to ten" individuals with anomalies in their health records, and any who were found to have disqualifying conditions.

Thank you for your cooperation. Please contact me with any questions or concerns.

Respectfully,

Raymond J. Toney
Attorney and Counselor at Law

Copy to: CDR Willie Cacho